GREEN STREET ASSOCIATION, an Illinois not-for-profit corporation, James Batts, Velma Batts, et al., Plaintiffs,

v.

Richard J. DALEY, City of Chicago, Department of Urban Renewal of the City of Chicago, Lewis W. Hill, Robert C. Weaver, William L. Slayton and A. Dean Swartzel, Defendants.

No. 65 C 1645.

United States District Court
N. D. Illinois, E. D.

Feb. 10, 1966.

Cotton, Watt, Rockler & Jones, Chicago, Ill., for plaintiff.

Raymond F. Simon, Corp. Counsel, Chicago, Ill., for defendants Richard J. Daley, City of Chicago and Department of Urban Renewal of City of Chicago.

Edward V. Hanrahan, U. S. Atty., Chicago, Ill., for defendants Lewis W. Hill, Robert C. Weaver, William L. Slayton and A. Dean Swartzel.

ROBSON, District Judge.

In October of 1965 plaintiffs filed this five-count complaint which seeks to enjoin further action by defendants in a proposed urban renewal project in Chicago. The action is brought by the Green Street Association, a nonprofit corporation organized for protecting and promoting the interests of residents of the Central Englewood area, and by some 127 individual plaintiffs, all Negroes who are owners or lessees of realty in that area. The Central Englewood area is a *small part* of the much larger Englewood Conservation area.

Count I of the complaint, which names only local Chicago defendants, alleges that the federal Housing and Home Finance Agency granted the City of Chicago $250,000 for survey and planning work on an urban renewal plan in the Central Englewood area, to which the City of Chicago contributed $25,000. Plaintiffs assert that the plan calls for a $13,000,000 expenditure for condemnation, acquisition and demolition of some 300 buildings consisting of 600 dwelling units, which are 85% inhabited by Negroes, on the ground of the need for revitalizing the commercial centers in the area. That plan was approved by the Chicago City Council in July of 1964.

Plaintiffs assert that since the area is one which has regularly been declining in business trade and is also one in which many of the buildings are "standard," the "project" is not a good faith urban renewal plan but an effort to accomplish Negro clearance in the expectation of reclaiming and re-establishing the commercial trade and business of white customers.

Plaintiffs allege that Mayor Richard J. Daley, the City of Chicago, the Department of Urban Renewal and its commissioner, Lewis Hill, and several large commercial interests in the area have conspired together to create a no-Negro "buffer zone" between the shopping area and the surrounding residential community in order to make the shopping area more attractive to white persons.

Count II names both local and federal defendants. The federal defendants include Robert C. Weaver, Administrator of the Housing and Home Finance Agency, William L. Slayton, Commissioner of the Urban Renewal Administration of said agency, and A. Dean Swartzel, Regional Director of the Urban Renewal Administration for Region No. IV, which includes the City of Chicago.

Count II alleges that Section 105(d) of the National Housing Act of 1949, 42 U.S.C. § 1450 et seq., requires a "public hearing" by a local agency prior to acquisition of land for an approved federal urban renewal project. It also alleges that the only hearing ever conducted in respect to the Central Englewood project occurred when interested persons were permitted to read statements before the Committee on Housing and Planning of the Chicago City Council. Plaintiffs assert that proper notice was not given and they were denied the right to call witnesses, present evidence, and to confront defendants to determine their reasons for support of the project and were harassed and intimidated by committee members.

Count II seeks a declaration that plaintiffs have been denied a full and fair hearing, and that the "project" was not validly approved by the Chicago City Council, and to enjoin the institution of condemnation suits until a full and fair public hearing has been held.

Count III names both local and federal defendants. It alleges that the intent of Congress in passing the National Housing Act of 1949 was to rectify housing shortages and provide decent and suitable housing for all American families. Plaintiffs assert that the "project" violates that purpose because it involves destruction of good and adequate residential housing and expands commercial, not residential facilities, and therefore takes private property for private, not public use.

This count asks the court to adjudicate the "project" as arbitrary, capricious and unlawful and that the acts of defendants in approving such plan deprive plaintiffs of property rights without due process of law. Plaintiffs seek a declaration that defendant Weaver violated the Housing Act of 1949 in approving this "project" although the objects of the Act could have been accomplished through rehabilitation of the project area, not by destruction.

Count IV, naming both local and federal defendants, alleges that Section 105 (c) of the Housing Act of 1949 requires that contracts for loans shall provide a "feasible" plan for relocating displacees and that defendants have failed to comply with this statutory requirement. Plaintiffs assert that because of the segregated nature of the City of Chicago the vast majority of Negroes live in "ghettoes." They reason that plaintiffs will be able to find new housing only in these "ghettoes" and will, therefore, be subjected to facilities less sanitary and desirable than their present housing and will pay more for purchase or rental.

Secondly, this count asserts that because the Department of Urban Renewal has in the past referred families displaced from urban renewal projects to relocation facilities determined by their race in accordance with the segregated residential pattern of the City, the project therefore provides separate relocation facilities determined by race. The plain-

tiffs conclude that the "project" recognizes and accepts the separate relocation facilities based on race and proposes to relocate plaintiffs in conformity with this pattern whereby it violates the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.), in that it plans to subject plaintiffs to discrimination under a program and activity receiving federal financial assistance in violation of Section 601 of the Act.

Plaintiffs pray that the relocation plan of the "project" be adjudged invalid and unconstitutional as it will deprive them of equal protection of the law; that it will violate their rights under Section 601 of the Civil Rights Act of 1964, and that it violates the Housing Act of 1949 as it does not contain an adequate, realistic and feasible plan for relocation of plaintiffs.

Count V, which names only local defendants, alleges that the "project" is contrary to Sections 3 and 21 of the Illinois Urban Renewal Consolidation Act of 1961 (Ill.Rev.Stat.1965, ch. 67½, § 91.101 et seq.), as the project area is not a "conservation area" within the definition of the Act and because it never was approved by a validly constituted "Conservation Community Council" as required by the Act.

Plaintiffs ask the court to declare that the "project" is contrary to the Urban Renewal Consolidation Act of 1961 and is, therefore, illegal.

Both the local and federal defendants have moved to dismiss. The issues have been fully briefed and were also argued orally.

The defendants assert as the grounds for dismissal: (1) there is a lack of federal jurisdiction as none of the acts of these defendants deprives plaintiffs of any legal rights; (2) there is no substantial federal question raised by the complaint; (3) no plaintiff has a standing to sue; (4) the statute, 42 U.S.C. § 2000d, grants no rights to these plaintiffs; (5) plaintiffs have an adequate remedy at law, and (6) the United States is an indispensable party and has not

been joined and has not consented to be sued.

Defendants also assert that Robinette v. Chicago Land Clearance Commission, 115 F.Supp. 669 (N.D.Ill.1951), and Harrison-Halsted Community Group, Inc. v. Housing and Home Finance Agency, 310 F.2d 99 (7th Cir. 1962), are authority for their position that this complaint does not raise a substantial federal question. In particular, defendants maintain that the *Harrison-Halsted* case, supra, is determinative of every issue raised by plaintiffs in this case.

Plaintiffs deny that the *Harrison-Halsted* case is controlling and counter that in Progress Development Corporation v. Mitchell, 286 F.2d 222 (7th Cir. 1961), where the plaintiff, a real estate development company, after disclosure of a plan to sell houses on an integrated basis roughly in proportion of Negroes to whites in Chicago, and after certain parties took preliminary steps to condemn its property, filed suit prior to the actual institution of condemnation proceedings, the court held that Count III, which charged a conspiracy in terms similar to the conspiracy charged in Count I of the instant complaint at bar, was wrongfully dismissed by the district court. Plaintiffs differentiate the *Harrison-Halsted* case, which had no count such as did the *Progress Development* case and this action, and that therefore the *Harrison-Halsted* decision is not authority for dismissal.

The court concludes, however, that the *Harrison-Halsted* decision is completely dispositive of the instant suit and requires its dismissal. There, as here, plaintiffs sought an injunction to prevent government agencies from proceeding with plans to acquire and clear, under an urban renewal program, an area in Chicago. The plaintiffs there were an association and individuals owning property in the area. There, also, the complaint was made of the inadequacies of the hearing before the City Council, or the Land Clearance Commission, the State Housing Board, and the HHFA. Allegations were made in the *Harrison-*

*Halsted* case that there resided in the *Harrison-Halsted* tract two minority groups, Negroes and Mexicans, "against whom there is, at the present time, in Chicago, extensive discrimination in housing; that the University site project will force these people out of the area. This loss in minority group housing is not being replaced elsewhere in the community." There was also an allegation that one portion "constituted the least deteriorated portion * * * of the area" and "most of the remaining part is occupied by perfectly sound residential structures." Jurisdiction in the *Harrison-Halsted* case was also predicated on 28 U.S.C. § 1331, and Section 10 of the Administrative Procedure Act (5 U.S.C. § 1009). They complained of being deprived of their property without due process of law and they had a standing to raise the questions of federal law.

The Court of Appeals in the *Harrison-Halsted* case (310 F.2d 99) made these very pertinent observations at 103–106:

" * * * [I]n spite of the outraged feelings of many people who have interests in this area, we have in mind that questions arising from *the taking of property by condemnation for state purposes, are ordinarily matters for determination by the state courts.* The plaintiffs in this case have sought relief in a federal court. Whether they may properly do so depends principally on whether they have a standing to sue and whether a substantial federal question is involved.

"We think it is well settled that in a private suit in a federal court, where it is claimed that a substantial federal question is involved, it must clearly appear that defendant's acts constituted the invasion of plaintiffs' private legal rights. [Citing cases.] * * *

"The federal Housing Act of 1949 is a subsidy statute which provides for federal grants of aid to local governmental units. * * * *It is obvious that none of the plaintiffs is or was a party to the subsidy contract.*

"When a subsidy application is approved by the Administrator of the HHFA, contracts are entered into by the Agency and the local governmental body, here, the Chicago Land Clearance Commission. Congress did provide certain standards to guide the Administrator in the exercise of his discretion. *But, such provisions and regulations thereunder do not confer legal rights upon plaintiffs, as individuals, separate from their position as members of the general public.*

*"The Housing Act of 1949 contains no provision for a hearing before the HHFA. It contains no provision for a judicial review.* * *

"Plaintiffs argue that although the Housing Act says nothing about a judicial review, Section 10 of the Administrative Procedure Act * * does so provide."

\* \* \* \* \* \*

*"Plaintiffs, in effect, argue that Section 10(a) and (c) confers standing upon any one who suffers economic injury as a result of agency action* regardless of whether that person's private legal rights are violated. *We do not think that this is a permissible interpretation."*

\* \* \* \* \* \*

"Other courts, without specific discussion of the Administrative Procedure Act, have dismissed complaints on the ground the plaintiffs had shown no injury to their private rights. * * *

"We hold plaintiffs herein do not have a right of judicial review of the Agency action herein, pursuant to Section 10 of the Administrative Procedure Act.

"Plaintiffs * * * argued that their interests and the interests of the community would be better served were the area to be rede-

veloped for residental and commercial use.

"The use to which plaintiffs desired the land to be put is undeniably a lawful public use. But, using the area acquired as a site for the * * University * * * is likewise a lawful public use. Courts have consistently denied the standing of citizens to challenge the choice made by public authorities between different and competing public uses. The legislature * * * rather than 'interested' citizens, is the guardian of the public needs to be served by social legislation. [Citing cases.]

"Perhaps the leading case on this point is Berman et al. v. Parker et al., 348 U.S. 26. [75 S.Ct. 98, 99 L.Ed. 27]. * * * In a District of Columbia slum clearance program, plaintiffs were the owners of a department store in the area affected. *Plaintiffs claimed their property was in good condition and should not be designated as slum property.* * *

"The Supreme Court said: * * 'We do not sit to determine whether a particular housing project is or is not desirable.' * * *

" * * * 'The role of the judiciary in determining whether that power [of eminent domain] is being exercised for a public purpose is an extremely narrow one.' "

* * * * * *

"On the basis of these and other authorities none of the plaintiffs have any private legal or vested interest in the type of public use redevelopment to be conducted in the area after the land has been acquired and the slums have been cleared. We so hold."

* * * * * *

" * * * [W]e consider the motion of HHFA for dismissal of the suit against it on the ground that it is a nonsuable agency of the United States. We think this view is sound. This agency is an agency of the executive branch of the United States government. * * * 'It has long been established that such agencies are not truly juridical persons but are strictly representatives of the government, who may not be sued in evasion of sovereign immunity.'

*"We have no right or justification to speculate that the state courts of Illinois will not protect any rights the plaintiffs may have. The United States Supreme Court and other federal courts have repeatedly refused to entertain suits in which plaintiffs' personal or private legal rights have not been infringed and could be infringed only by an improper judgment in a condemnation proceeding. * * *"* (Emphasis ours.)

The Court of Appeals cited the Shapiro v. Chicago Land Clearance Commission case (19 Ill.App.2d 461, 464–465, 154 N.E.2d 329 (1958)), where it was said:

" * * * 'The decision of the Commission was merely one of the steps prerequisite to the exercise of the power of eminent domain * * in the event of which plaintiffs will have an opportunity to be heard "on each alleged infringement of their rights" * * * ' "

The Court of Appeals concludes, 310 F.2d at 106, that "Insofar as a legal controversy is presented, it properly belongs in the Illinois State Courts." The court held that plaintiffs had failed to raise a substantial federal question and failed to establish any standing to sue in the federal court action.

█ The defendants assert that the plaintiffs have an adequate remedy at law and their rights will be protected in the condemnation suits when filed (Combs v. Illinois State Toll Highway Commission, 128 F.Supp. 305 (N.D.Ill.1955); Deerfield Park District v. Progress Development Corporation, 22 Ill.2d 132, 174 N.E.2d 850 (1961); People ex rel. Gutknecht v. City of Chicago, 3 Ill.2d 539,

549, 121 N.E.2d 791 (1954)). The plaintiffs state that even assuming that State remedies are adequate for plaintiffs to present their constitutional claim, the jurisdiction of the federal court to hear their suit is not affected. The court concludes that the *Harrison-Halsted* case is controlling on the point and that plaintiffs have an adequate remedy at law in the condemnation suits that may be filed in the Illinois State courts (Ross v. Chicago Land Clearance Commission, 413 Ill. 377, 108 N.E.2d 776 (1952); Shapiro v. Chicago Land Clearance Commission, 19 Ill.App.2d 461, 154 N.E.2d 329 (1958)).

 The defendants next argue that the statute, 28 U.S.C. § 2283, prohibits this court from enjoining State court proceedings, as sought by the complaint. That act provides:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The Court of Appeals for the Seventh Circuit held the statute is not suspended or modified even in civil rights cases (Smith v. Village of Lansing, 241 F.2d 856 (7th Cir. 1957)). The plaintiffs maintain that Section 2283 is merely the hands-off doctrine referred to as "comity" and that no proceedings have yet been filed in the State courts. Although the court in *Harrison-Halsted* did not consider this section, the court in *Progress Development* did. In *Progress Development* (286 F.2d 222) it was said, at 232:

> " * * * [W]e find nothing in the language of Title 28, U.S.C.A. § 2283 which precludes the district court from granting equitable relief against defendants Park Board and District in the proper circumstances. This equitable power is also authorized by 28 U.S.C.A. § 1343."

However, an examination of the case reveals that proper circumstances are ex-

ceptional and that ordinarily no injunction will issue to restrain condemnation where the issue can be raised in the State court (State of Georgia v. City of Chattanooga, 264 U.S. 472, 44 S.Ct. 369, 68 L.Ed. 796 (1924); Baber v. Texas Utilities Company, 228 F.2d 665 (5th Cir. 1956); Carver Progressive Club v. Miriani, 192 F.Supp. 825 (E.D.Mich.1960), aff'd 288 F.2d 889 (6th Cir. 1961)). Further, not even in the *Progress Development* case was the cause remanded to enjoin the State condemnation action which is the relief here sought.

As admitted by the plaintiffs, the unique part of this litigation stems from the allegation that plaintiffs' rights pursuant to the Civil Rights Act of 1964 have been violated. Their main contention is that the actions of the defendants in promulgating a relocation plan based on race is unconstitutional and contrary to the provisions of the Civil Rights Act of 1964. They further assert that Section 10 of the Administrative Procedure Act as well as the Civil Rights Act of 1964 give them the right to judicial review of agency action.

Plaintiffs concede that virtually all of the decided cases challenging relocation plans of other urban renewal projects have held that displacees from the project do not have standing to sue to challenge the relocation plan. However, they say this case is distinguishable from all prior cases because the actions of the defendants in promulgating a relocation plan based on race is unconstitutional and contrary to the provisions of the Civil Rights Act of 1964.

They reason that Section 10 of the Administrative Procedure Act provides a right to judicial review by any person "suffering legal wrong" or who is "adversely affected or aggrieved by such action," except in two instances: (1) where the statute precludes judicial review, or (2) where agency action is by law committed to agency discretion.

Plaintiffs assert that under Section 603 of the Civil Rights Act of 1964, the question of federal assistance to a dis-

criminatory program "shall not be deemed to be committed to unreviewable agency discretion," therefore expressly granting judicial review. Also, they assert that the Housing Act of 1949 does not prohibit judicial review. The plaintiffs conclude therefore that they do have standing to sue.

Defendants, on the other hand, maintain that 42 U.S.C. § 2000d et seq. of the Civil Rights Act of 1964, does not give these plaintiffs any rights as they are not the people at whom it was aimed. Federal defendants reason that Congress by passing this Act has prohibited *recipients* of federal financial assistance from discrimination in any participation in the benefits of federal financial assistance on the ground of race, color or national origin, and since plaintiffs are not *recipients,* the Act confers no legal rights on them. Consequently, defendants argue that they are not persons who suffered "legal wrong" under the Administrative Procedure Act; that there is a lack of standing to sue, and as a result the court lacks jurisdiction as there is no federal question.

■ The court agrees that the Civil Rights Act of 1964 was intended to prohibit discrimination against *recipients* of federal funds, and that plaintiffs are not such recipients. The Civil Rights Act of 1964, therefore, confers no legal or other rights on plaintiffs apart from the public as a whole.

Thus the view of congressmen appearing in the 1964 U.S.Code Congressional and Administrative News, concerning this section of the Civil Rights Act of 1964, is stated, at p. 2512:

" * * * Moreover, upon the insistence of the gentleman from Ohio (Mr. McCulloch) and other members of the committee, any recipient who has had financial assistance terminated may obtain judicial review of such action."

■ Clearly recipients have the right to obtain judicial review. The Civil Rights Act of 1964 does not contemplate persons such as the plaintiffs bringing actions such as the present one under the Act. It would be more probable that various State and local agencies or governmental units would be the recipients referred to in Section 2000d–1 of the Act. While it is conceivable that private citizens might sometimes be the recipients, however, in the particular situation at bar, the grant or contract, if any, for federal assistance would not be made directly to plaintiffs, but rather some agency of the City of Chicago would be the recipient. Although the members of the public are intended to be the ultimate beneficiaries of federal subsidy programs granting aid to local urban renewal projects, plaintiffs certainly are not the direct recipients of such funds referred to in the Civil Rights Act of 1964, which grants those recipients a right to judicial review. Therefore, the plaintiffs are not persons who suffered "legal wrong" because of agency action.

This court further holds that plaintiffs have no standing because they are not parties who are "adversely affected or aggrieved" by agency action.

■ The defendants' combined argument is that there is a lack of a substantial federal question under 28 U.S.C. § 1331, on which Counts II through IV are based, as the designation of the area as a "slum or blighted area" or a "conservation area" is preliminary to condemnation. Therefore, defendants conclude that these plaintiffs have suffered no direct injury and have not been "adversely affected or aggrieved" by agency action, nor have their legal rights been changed in any way (Robinette v. Chicago Land Clearance Commission, 115 F.Supp. 669 (N.D.Ill.1951); Waddell v. Chicago Land Clearance Commission, 206 F.2d 748 (7th Cir. 1953)). Further, there is no allegation of jurisdictional amount. A mere allegation of fact of deprivation of civil rights and constitutional rights is not sufficient to establish that assertion even in the face of a motion to dismiss (McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209

(1947); Pacific States Box & Basket Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138 (1935); Hess v. Petrillo et al., 259 F.2d 735 (7th Cir. 1958)).

In Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), the United States Supreme Court held that a suit by a taxpayer to enjoin expenditure of federal subsidy funds must show that the statute is invalid and that he has sustained or is immediately in danger of sustaining some direct injury and not merely that he suffers in some indefinite way in common with people generally. There is no showing that the Housing Act of 1949 is invalid, or that the plaintiffs have or are about to suffer direct injury, or in a way not common with taxpayers generally (United Milk Producers of New Jersey v. Benson, 96 U.S.App.D.C. 227, 225 F.2d 527 (1955); Kansas City Power & Light Co., Inc. v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924 (1955)).

■ In generally observing the plaintiffs' allegations that they are persons "adversely affected or aggrieved" by the agency action of failing to provide an unsegregated pattern of relocation, the court emphasizes that to date plaintiffs have suffered no legal wrong or injury of any kind. The allegations that the relocation plan tends to foster and promote segregation are a fallacious smoke screen thrown up to obscure the true facts. The Central Englewood area cannot be considered *alone* as an entity *apart* from the overall Englewood Conservation area. If Negroes constitute 85% of the population in the plaintiffs' area a transfer to some other neighborhood, be it Negro or white, could be little worse percentage wise, racially, than that which exists in Central Englewood today. *Any* proposed urban renewal plan requires displacement and relocation of persons who will be discriminated against as to the race of which there is a plurality inasmuch as there is always a plurality of one race in a neighborhood. If this argument were sustained, it would make every federally aided urban renewal plan illegal according to the Civil Rights Act of 1964. Should this court sustain plaintiffs' right to maintain this action it would prevent the face lifting of neighborhoods which most sorely need it and would tend to perpetuate segregation, the very thing which the Civil Rights Act of 1964 was intended to prevent.

This court is aware of the problems to be solved in the relocation of persons displaced by urban renewal plans. However, if this litigation were permitted to restrain the civic action, it would be standing in the path of progress already made and perpetuating the de facto segregation already existing to the detriment of those that this action purportedly seeks to protect.

Plaintiffs have urged additional reasons why they are entitled to relief in this action and the defendants likewise have made additional points in defense, but the court concludes that in the light of the holding in the *Harrison-Halsted* case on all vital issues, it is not necessary to pass upon each *seriatim*.

The statement of Judge Irving R. Kaufman in People of State of New York v. Galamison, 342 F.2d 255 (1965), at 273, seems appropriate in determining the viewpoint a court should take in cases of this nature:

"Since the Bill of Rights and the Fourteenth Amendment were intended to safeguard the fundamental rights of individuals against governmental impairment, judges are sorely tempted, when the state's awesome powers must be weighed against the citizen's rights, to stretch the meaning of statutes in order to strike the balance in favor of the individual. But, Justice Cardozo reminded us in his typically poignant language, that a judge 'is not a knight errant roaming at will in pursuit of his own idea of beauty or of goodness * * *. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence * * *.' "

The court grants the motions to dismiss and orders that the cause be, and it is hereby dismissed.