Joseph HALL et al., Plaintiffs,

v.

EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION et al., Defendants.

No. C–76–2090 RFP.

United States District Court,
N. D. California.

July 19, 1978.

Prudence Kay Poppink, Employment Law Center, San Francisco, Cal., for Joseph Hall et al.

S. Jennifer Johnson, Equal Employment Opportunity Commission, Washington, D. C., Gary Siniscalco, San Francisco Regional Office, Equal Employment Opportunity Commission, San Francisco, Cal., for defendant EEOC.

## OPINION

PECKHAM, Chief Judge.

This case is a class action challenge to the accelerated procedures utilized by the Equal Employment Opportunity Commission (EEOC) for the processing of discrimination charges during the Transitional Quarter (TQ) project. During the duration of the TQ project, from August 16, 1976 to September 30, 1976, the Accelerated Procedures Memorandum of August 10, 1976 in effect modified the procedures of the EEOC's Compliance Manual with regard to the processing of charges filed before July 1, 1973. During the summer of 1976 before the TQ project, an EEOC inventory indicated a backlog of 17,690 charges filed with the EEOC before July 1, 1973, but still unresolved. The goal of the TQ project was to eliminate this backlog, and in fact more than 9,000 of these charges were closed by September 30, 1976.

The name plaintiffs in this action are seven individuals and one organization, the National Organization for Women. All seven individuals filed charges with the EEOC before July 1, 1973, and five of the seven received letters of determination from the EEOC between August 16 and September 30, 1976, indicating that there was not reasonable cause to believe they had been discriminated against and notifying them of their right to sue. A sixth individual, Ann O'Brian Petrel, received her "no cause" determination and right-to-sue letter on August 11, 1976, but alleges that her charge was also processed under the TQ project procedures. The seventh individual, Joseph Hall, had not received a letter of determination as of the filing of this suit. The name plaintiffs seek to represent a nationwide class of persons similarly situated.

The essence of the plaintiffs' claim is that in adopting the accelerated procedures utilized in the TQ project, the EEOC failed to adequately investigate plaintiffs' charges, and where applicable, failed to engage in a "bona fide" attempt to conciliate those charges, all in violation of the EEOC's duty under § 706(b) of Title VII, 42 U.S.C. § 2000e–5(b), and the regulations promulgated thereunder. More specifically, the plaintiffs allege several causes of action. First, they seek relief on an implied right of action under Title VII itself. Second, they maintain that the EEOC's actions constitute "agency action" which may be reviewed under the Administrative Procedure Act (APA), 5 U.S.C. § 551 et seq. Third, the plaintiffs claim that the EEOC's adoption of the Accelerated Procedures Memorandum amounted to "rule making" under the Administrative Procedure Act, 5 U.S.C. § 553, and violates the APA because the Memorandum was promulgated without notice, hearing, or opportunity for comment. Finally, they argue that the EEOC's actions deprived them of rights protected by the Fifth Amendment without due process of law. The plaintiffs seek both declaratory and injunctive relief, and request that the court order the EEOC to reopen and reconsider all determinations of charges

filed before July 1, 1973, that were made during the TQ project and adequately investigate and attempt to conciliate them.

 The EEOC has argued that this court does not have jurisdiction over the subject matter of this action. After careful consideration, however, it is our conclusion that jurisdiction over this action is proper under one or more of the following: 28 U.S.C. §§ 1331, 1337 and 1343(4). Similarly, we conclude that these plaintiffs clearly have standing to bring this action. The injury which the plaintiffs have allegedly suffered is not only that they have been discriminated against, but that they have been denied a proper investigation of their discrimination charge, making it, they say, very difficult to obtain a remedy for the discrimination against them. There is a clear nexus between this alleged injury and the challenged actions of the EEOC, and the relief requested would remedy the alleged injury. *See Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

 Nor do we think that the action should be dismissed under Fed.R.Civ.P. 19(b) for failure to join indispensable parties. The defendants have argued that the plaintiffs should join all of the employer respondents named in the charges filed with the EEOC because they have an interest in the possible reopening of charges against them that were previously closed. However, the EEOC's regulations, 29 C.F.R. § 1601.19b(b), allow the EEOC to reconsider determinations made on charges at any time on its own motion, without first notifying the respondent employer. This indicates that, although the respondents may have an interest in the outcome of this case, this interest is not one which would make their joinder especially desirable under Fed. R.Civ.P. 19(a), much less indispensable under Rule 19(b). Finally, because we decide herein that plaintiffs have not stated a cause of action, we do not reach defendants' contention that the federal official defendants are immune from suit in their individual capacities.

## A. *IMPLIED RIGHT OF ACTION UNDER TITLE VII*

We now are in a position to discuss the specific causes of action alleged by the plaintiffs' complaint. The plaintiffs' first attempt to state a cause of action utilizes Title VII itself. They allege that the EEOC has failed in its legal duty under § 706(b) of Title VII to investigate all charges of discrimination brought before it and to attempt to conciliate all charges that appear to have some basis in fact. No section of Title VII specifically authorizes private actions against the EEOC to enforce any provisions of Title VII. The plaintiffs' argument, in essence, is that a right of action against the EEOC for charging parties should be implied under Title VII to provide a means of enforcing the statutory investigation and conciliation requirements.

 The standards to be applied in determining whether to imply a cause of action under a federal statute which does not expressly provide for such a right of action have been recently set forth by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26, 36 (1975). Although the question specifically involved in *Cort v. Ash* was whether a criminal provision of the Federal Election Campaign Act implied a private remedy as well, the language used and the number and scope of the cases cited by the Court clearly indicate that it was designed as a general test of whether to imply a cause of action under a statute not otherwise providing for one. As set out by the Supreme Court, the relative factors to take into consideration are: (1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one; (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff; and (4) whether the cause of action is one traditionally relegated to state law, so that a cause of action based solely on federal law would be inappropriate.

■ Under this four part test, we conclude that no right of action under Title VII should be implied in this situation. Initially, it is clear that the first and last factors mentioned in *Cort v. Ash, supra,* would tend to support the creation of a right of action. The plaintiffs, as alleged discriminatees, can be assumed to be among the class of persons for whose benefit Title VII was enacted, and this is not an area traditionally relegated to state law. However, both the second and third factors in the test militate strongly against implying a cause of action here.

As part of the 1972 amendments to Title VII, Congress added § 706(f)(1), which allows charging parties to file their own lawsuit once 180 days have passed since the filing of their charge. The Supreme Court recently had occasion to construe this provision in *Occidental Life Insurance Co. v. Equal Employment Opportunity Comm.,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), where it was held that § 706(f)(1) did not impose a 180-day time limitation upon the EEOC's power to file enforcement suits in federal court. In deciding this question, it was necessary for the Court to consider the intent of Congress in enacting § 706(f)(1), and in so doing the Court quoted extensively from the legislative history of the 1972 amendments. The Court's conclusion was that Congress clearly intended to preserve the aggrieved party's right to bring his own suit, no matter what action, inaction, or refusal to act occurs on the part of the EEOC. This conclusion is amply supported by the legislative history. For example, an analysis presented to the Senate with the Conference Committee Report states:

"[T]he provisions . . . allow the person aggrieved to pursue his or her own remedy under this title in the courts where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution." 118 Cong.Rec. 7168 (March 6, 1972); *as quoted in Occidental Life Insurance Co. v. EEOC,* 432 U.S. at 365, 97 S.Ct. at 2453, 53 L.Ed.2d at 411.

This remedy explicitly provided by Congress strongly implies that Congress did not intend that charging parties be able to force the EEOC, by means of suit or the threat thereof, to more fully or speedily investigate or attempt to conciliate their charge. Instead, a charging party dissatisfied with the EEOC may, under § 706(f)(1), circumvent the EEOC entirely and file his own suit. Since the resulting federal court action is entirely *de novo* and does not in any way rely upon the EEOC's actions, the charging party's interest in remedying any discrimination which is still occurring and obtaining relief for past discrimination is fully satisfied. Perhaps it may be the case that the person alleging discrimination may have a more difficult time proving his charge absent the benefit of an EEOC investigation, or will have a more difficult time obtaining an attorney without a probable cause determination by the EEOC. But Congress must be deemed to take such problems into consideration when it designed the comprehensive statutory scheme for remedying employment discrimination established by Title VII.

■ In fashioning statutory remedies such as Title VII, Congress has a wide latitude in determining the procedures and methods used in reaching its goal, and it is not for the federal courts to second guess Congress in this regard if it is apparent that Congress had a rational basis for acting the way it did. Here, there were good reasons Congress may have had in mind for denying the right of action which plaintiffs seek to establish. For one, by 1972 the substantial backlog of charges awaiting EEOC processing had made it clear that the EEOC was severely overburdened. Congress could well have decided that it was preferable to preclude charging parties from suing the EEOC and send them directly to federal court to prosecute their charge, in order to avoid tying up the limited resources of the Commission in litigation against charging parties.

The cases cited by the plaintiffs in support of their arguments for an implied cause of action under Title VII do not sug-

gest a contrary result. In all of the cases they cite, Title VII defendants attempted to utilize the non-existence or insufficiency of EEOC investigations and conciliation attempts as a defense to a suit brought against them by the EEOC. Because such efforts were thought to be jurisdictional prerequisites to an EEOC action, some courts have been willing to examine them. But these decisions are inapposite to the question presented here, which is whether to imply a distinct new cause of action against the EEOC.

Thus it is our conclusion as to the plaintiffs' first alleged cause of action, an implied right of action under Title VII, that under the standards of *Cort v. Ash, supra*, the legislative history of the 1972 amendments to Title VII strongly indicate that it was not the intent of Congress to imply the cause of action here sought to be maintained, and that to imply such a right of action would be inconsistent with the statutory scheme set up by Congress for the full and expeditious realization of the goal of equal employment opportunity for all.

B. *ADMINISTRATIVE PROCEDURE ACT CAUSES OF ACTION*

■ The plaintiffs' second and third alleged causes of action are under the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* Their second cause of action seeks judicial review of the adequacy of the EEOC's investigation and conciliation efforts on the theory that these are "agency actions" made reviewable by the APA. The APA defines "agency action" broadly to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The plaintiffs rely primarily on the "failure to act" portion of this definition in arguing that there is "agency action" here.

However, the APA does not provide that all "agency action" is automatically reviewable. 5 U.S.C. § 704 specifically provides for judicial review of "agency action made reviewable by statute and final agency action for which there is no other adequate

remedy in a court." Since no statute expressly makes actions of the EEOC reviewable, there must be "final agency action" and "no other adequate remedy in a court" for judicial review by this court to be proper. Although we have substantial doubts whether the allegedly inadequate EEOC investigations and conciliation attempts can be considered "agency action," much less "final" agency action, we will simply assume that since the "generous review provisions" of the APA are to be given a "hospitable" interpretation, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *quoting Shaughnessy v. Pedreiro*, 349 U.S. 48, 51, 75 S.Ct. 591, 594, 99 L.Ed. 868, 873 (1955), that "final agency action" can be found here. *Cf. Kixmiller v. Securities & Exchange Comm.*, 160 U.S.App.D.C. 375, 492 F.2d 641 (1974) (SEC's refusal to review staff no-action decision). Nevertheless, we conclude that review by this court is precluded because there exists an "adequate remedy in a court" for the grievances of the plaintiffs.

The plaintiffs argue that what they are being denied is their right to an adequate investigation of their charge and a wholehearted attempt to conciliate their charge. In effect, they contend that the ability to file a *de novo* action in federal court, as provided by § 706(f)(1) of Title VII, is not an "adequate remedy in a court" for the allegedly inadequate investigation and conciliation efforts of the EEOC. We disagree with this analysis. Although Title VII admittedly places strong emphasis on conciliation and voluntary resolution of charges of discrimination, Title VII must be viewed as a comprehensive statutory scheme designed to eradicate employment discrimination. The only "right" it establishes is the right to be free of discrimination. This interest is wholly preserved, even if the EEOC errs in its processing of the charge, by the right to a trial *de novo* provided by § 706(f)(1), although this does not remedy an inadequate investigation or attempt to conciliate as such.

The legislative history of the APA indicates that the Act was "designed to afford

a legal remedy for every wrong." S.Rep. No.752, 79th Cong., 1st Sess. 7 (1945). Furthermore, the Supreme Court has held that the APA should be liberally interpreted to permit broad judicial review unless Congressional intent to preclude review is clearly expressed. We are convinced, however, by the statements in the legislative history quoted in *Occidental Life Insurance Co. v. EEOC*, supra, and reproduced above, that Congress intended that the private right of action preserved by § 706(f)(1) be the all-purpose remedy for charging parties dissatisfied with the EEOC's handling of their charge. In short, we do not think Congress could have been more clear in expressing its intent that the private right of action preserved by § 706(f)(1) is "an adequate remedy in a court" for the alleged shortcomings in the EEOC's handling of the plaintiffs' charges. Thus we hold that the actions of the EEOC herein alleged are not reviewable by this court under the APA.

The plaintiffs also allege that the EEOC's adoption of the Accelerated Procedures Memorandum, which modified for the duration of the TQ project the procedures specified in the EEOC's Compliance Manual, constituted "rulemaking" under the APA. Since the notice and comment procedure set forth at 5 U.S.C. § 553 for promulgating rules was not followed with regard to the Accelerated Procedures Memorandum, the plaintiffs contend that the EEOC therefore acted in violation of the APA. Such a failure to comply with the notice and comment procedure where it is required voids the rule. *City of New York v. Diamond*, 379 F.Supp. 503, 516 (S.D.N.Y.1974) (citing cases). The essential distinction which must be made in determining whether the notice and comment procedure of 5 U.S.C. § 553 is required is between "legislative" rules and "interpretive" rules. *National Association of Insurance Agents, Inc. v. Board of Governors of the Federal Reserve System*, 160 U.S.App.D.C. 144, 146, 489 F.2d 1268, 1270 (1974). *See* K. Davis, Administrative Law of the Seventies 146–7 (1976). This distinction is expressly recognized in § 553(b)(3)(A), which excepts from the procedure "interpretive rules, general

statements of policy, or rules of agency organization, procedure, or practice."

Congress has not delegated to the EEOC any authority to promulgate legislative rules, and thus its rules are by necessity interpretive only. Title VII § 713(a), 42 U.S.C. § 2000e–12(a). *General Electric Co. v. Gilbert*, 429 U.S. 125, 141, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); *Equal Employment Opportunity Comm. v. Raymond Metal Products, Inc.*, 530 F.2d 590, 592–93 (4th Cir. 1976). Thus § 553 by its terms does not require the notice and comment procedure to be followed for any of the rules adopted by the EEOC. However, several courts have required even admittedly "interpretive" rules to be promulgated with notice and comment when those rules have "substantial impact" upon private rights and obligations. Utilizing the common law of minimum procedural fairness, these decisions have reasoned that notice and comment are required when fairness requires the opportunity for public participation in the rulemaking procedure. *Independent Broker-Dealers' Trade Assoc. v. Securities & Exchange Comm.*, 142 U.S.App.D.C. 384, 442 F.2d 132 (1971), *cert. denied*, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 57 (1971); *National Motor Freight Traffic Assoc. v. United States*, 268 F.Supp. 90 (D.D.C.1967) (three-judge court), *aff'd* 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968).

Plaintiffs argue that the Accelerated Procedures Memorandum, because it substantially modified previous EEOC procedures set forth in the Compliance Manual, had such a "substantial impact." The short answer to this contention is that the substantial impact analysis has apparently not been adopted in the Ninth Circuit. *Rainbow Valley Citrus Corp. v. Federal Crop Insurance Corp.*, 506 F.2d 467 (9th Cir. 1974). *But see Saint Francis Memorial Hospital v. Weinberger*, 413 F.Supp. 323, 327–29 (N.D.Cal.1976). Even assuming the applicability of the substantial impact test in this circuit, we nevertheless conclude that adoption of the Accelerated Procedures Memorandum by the EEOC did not have a substantial impact on private rights.

The Accelerated Procedures Memorandum modified temporarily the procedures established by the EEOC Compliance Manual for processing charges filed with the EEOC. The Compliance Manual itself was issued without notice or comment. The purpose of manuals such as this one is to instruct and provide guidance for the agency's staff in administering its responsibilities. The Compliance Manual fleshes out the bare bones of the statute and regulations with explanations of the agency's specific policies and procedures; however, the Manual does not determine any rights or obligations of parties before the EEOC. Thus, the changes in EEOC procedures brought about by the Accelerated Procedures Memorandum did not significantly affect any existing rights or obligations. This conclusion is wholly consistent with decisions of other courts applying a substantial impact test. *E.E.O.C. v. National Cash Register Co.*, 405 F.Supp. 562, 569–72 (N.D.Ga.1975); *Carpenters 46 County Conference Board v. Construction Industry Stabilization Committee*, 393 F.Supp. 480, 493–94 (N.D.Cal.1975), *appeal dismissed as moot*, 522 F.2d 637 (Em.App.1975); *National Motor Freight Traffic Assoc. v. United States, supra*; *Pharmaceutical Manufacturers Assoc. v. Finch*, 307 F.Supp. 858 (D.Del.1970). To reach the opposite conclusion would be to hamstring agencies in their efforts to improve their internal procedures regarding the way they conduct their business, and rob them of virtually all flexibility in dealing with increasing workloads. Neither the APA nor notions of elementary fairness, *see Independent Broker-Dealers' Trade Assoc. v. Securities & Exchange Comm., supra*, 142 U.S.App.D.C. at 396, 442 F.2d at 144, require such a result.

## C. *DUE PROCESS CAUSE OF ACTION*

In a final attempt to state a cause of action, the plaintiffs allege that they were deprived of due process under the Fifth Amendment. Due process, of course, applies only to deprivations of "life, liberty, or property," and thus the plaintiffs must establish the existence of a protected liberty or property interest if they are to state a cause of action. Plaintiffs assert that such a constitutionally protected interest is involved in their "right" to obtain an adequate investigation by the EEOC of their charge, and to have it conciliated if found to have possible merit. They contend that the EEOC's implementation of the Accelerated Procedures Memorandum constituted a deprivation of these protected interests without due process.

Of necessity, any constitutionally protected interests in an investigation or conciliation attempt must arise from either Title VII or the regulations promulgated thereunder. In a number of cases involving the Fourteenth Amendment's due process clause, state statutes have been found to confer a constitutionally protected property interest, the withdrawal of which required procedures comporting with due process. But those state statutes are not at all analogous to the federal statute and regulations involved here. In each of those cases, the state statute conferred specific benefits, the absence of which would have a strong adverse effect on the affected person. *E. g., Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (public education); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (driver's license); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (public assistance). The contrast between those cases and the instant one is quite stark. Title VII and the regulations thereunder do not confer on charging parties any "benefit" of substance, or grant any entitlement to an investigation or conciliation attempt. Withdrawal of these alleged "rights" does not result in a significant adverse effect because the charging party retains the right to file a *de novo* action in federal court. What we have here are merely procedures designed to help protect the underlying right to be free from employment discrimination. Changes made by the EEOC in the scope and extent of these investigative and non-adjudicatory procedures are simply not within the due process clause. *See Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).

Plaintiffs advance an alternative argument under the due process clause, which attempts to utilize a line of cases that they contend set forth the rule that a departure from the established rules of procedure by an agency is a violation of due process.

Plaintiffs contend that implementation of the Accelerated Procedures Memorandum violated 29 C.F.R. § 1601.14, which states:

"The investigation of a charge shall be made by the Commission. . . . As part of each investigation, the person making the charge on behalf of the aggrieved person, the aggrieved person, and the respondent shall each be offered an opportunity to submit a statement of its position or evidence with respect to the allegations."

The plaintiffs allege that in practice under the Accelerated Procedures Memorandum, this regulation was effectively ignored and aggrieved parties were not given an opportunity to be heard as a part of the investigation of their charge. We must take this as true for purposes of this motion to dismiss. Their position is that any violation of an agency's regulations is *per se* a violation in due process. However, the rule is not so clear as the plaintiffs would have us believe.

■ The doctrine that a violation of an agency's regulation may violate due process stems from the Supreme Court's decision in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). The regulation involved there established a procedure to be followed in processing an alien's application to suspend his deportation. Two important distinctions from the instant case are immediately apparent. First, the regulations in *Shaughnessy* were legislative rather than interpretive, they had "the force and effect of law." 347 U.S. at 265, 74 S.Ct. at 502. Second, the Supreme Court in *Shaughnessy* found in effect that there was a deprivation of an interest protected by the due process clause, as can be seen from the Court's statement that: "[I]n arriving at its decision [the Board of Immigration Appeals must] exercise its own independent discretion, after a fair hearing, which is nothing more than

what the regulations accord petitioner *as a right.*" 347 U.S. at 268, 74 S.Ct. at 504 (emphasis added). Of course, the Supreme Court, in determining whether interests are protected by the due process clause, now utilizes a much more sophisticated test than whether there existed a "right" as such. *See Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). But the message of *Shaughnessy* remains clear that an agency's violation of its regulations is not a violation of due process if no interests within the protection of the due process clause are involved. Later cases cited by the plaintiffs only confirm the vitality of these distinctions, *e. g., Freidberg v. Resor*, 453 F.2d 935 (2d Cir. 1971).

■ As a final due process argument, the plaintiffs contend that the changes made by the Accelerated Procedures Memorandum violate due process in that they were arbitrary and capricious. However, we find that the Accelerated Procedures Memorandum was a reasonable response to the problem presented by a large backlog of older charges, quickly becoming stale, where the EEOC did not have sufficient resources to effectively reduce this backlog using its previous procedures.

Therefore, it is hereby ordered that the defendants' motion to dismiss this action is granted. Because of this ruling, we do not reach the defendants' motion for summary judgment regarding the plaintiffs Petrel and Mazelis.

IT IS SO ORDERED.