**Arsenio E. SALVADOR, Plaintiff,**

v.

**Terrel H. BELL, Secretary, United States Department of Education, Defendant.**

No. 84 C 10317.

United States District Court,
N.D. Illinois, E.D.

Aug. 20, 1985.

MEMORANDUM OPINION
AND ORDER

ROVNER, District Judge.

 This case arises under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulations. On November 20, 1984 plaintiff Arsenio Salvador ("Salvador") filed his *pro se* complaint against Terrel Bell, the Secretary of the United States Department of Education ("the Secretary") alleging that the Secretary failed to investigate his complaints and review decisions regarding his complaints that Roosevelt University ("Roosevelt") discriminated against him on the basis of his handicap, a learning disability. Roosevelt allegedly failed to make necessary modifications of its academic program to accommodate him in violation of Section 504 of the Rehabilitation Act.[1] Salvador alleged that, as a direct and proximate result of these violations, he was denied a Masters Degree from Roosevelt, denied the opportunity for employment, and has suffered mental anguish and emotional distress. He seeks damages in the amount of $10,000 and an injunction requiring the Secretary to fully investigate his complaints against Roosevelt.

The Secretary has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted on the grounds that, although the plaintiff may file a claim directly against Roosevelt under Section 504, Section 504 does not provide the plaintiff with a private cause of action against the Secretary. In the alternative, the Secretary has moved for summary judgment pursuant to Fed.R. Civ.P. 56(b) on the grounds that the Secretary has complied with his obligation described in 34 C.F.R. § 104.61 to investigate alleged violations of Section 504, and, consequently, the plaintiff's claim is without basis.

*Facts*

Salvador filed two complaints with the Department of Education Regional Office for Civil Rights in Chicago, Illinois ("Regional Office") claiming that Roosevelt, which is located in Chicago, discriminated against him because of his handicap, a learning disability. He filed the first complaint on May 19, 1980. On October 31, 1980, the Regional Office issued a Letter of Findings which concluded that the evidence uncovered by the Regional Office in its investigation of this complaint did not support the plaintiff's claim of discrimination against him because of his handicap by Roosevelt. The Letter of Findings indicated that the investigation by the Regional Office revealed that Roosevelt was never informed that the plaintiff had a learning disability that might require modifications of the school's academic requirements. Section 504 requires a recipient of federal financial assistance, such as Roosevelt, to "make such modifications to its academic requirements as are necessary to insure that such requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student." 34 C.F.R. § 104.44. Because that obligation only arises when the recipient knows of or is made aware of a beneficiary's handicapping condition, and because Roosevelt was never informed that the plaintiff had a learning disability, the Letter of Findings concluded that Roosevelt's obligation to make necessary modifications in its academic requirements to accommodate Salvador never arose.

As part of its investigation of Salvador's complaint, the Regional Office requested information from Salvador on the nature of his handicap. Salvador's physician did not release relevant medical records to the Regional Office despite two written requests by the plaintiff, although she did confirm

---

**1.** Salvador also alleged that the Secretary's failure to investigate his complaint and review decisions violated his constitutional rights to due process and equal protection. Because these conclusory allegations are not supported by any facts or with citation to any authority, the Court will dismiss them for failure to state a claim.

that the plaintiff was physically and mentally handicapped in an August 5, 1980 telephone conversation with a staff member of the Regional Office. She failed, however, to provide detailed information on the nature of his handicaps or on whether Salvador had a learning disability. Furthermore, when she notified Roosevelt that Salvador suffered from an illness that she diagnosed as cryptococcal meningitis, she did not mention that he had a learning disability. Nor did she inform the University that he required academic modifications due to a learning disability. Because the Regional Office had insufficient information on the nature of plaintiff's handicap, it could not ascertain whether Roosevelt had violated Section 504 by not sufficiently modifying its academic requirements.

The October 31, 1980 Letter of Findings prompted Salvador to file his second complaint against Roosevelt. In his second complaint, he provided the Office of Civil Rights with a neuropsychological evaluation dated November 22, 1980 as proof of his handicap. The doctor who evaluated him stated in his evaluation that Salvador had a past history of cryptococcal meninigitis, hydrocephalus, and posterior right shunt. He concluded, however, that "... at the same time, the deficiency in recent memory and learning ability make his academic failures recently entirely understandable, and it seems to be unlikely that he could manage a graduate course at present."

On March 20, 1981, the Regional Office issued its second Letter of Findings on Mr. Salvador's complaint. The Letter stated:

This additional evidence does not change our original findings. As we notified Mr. Salvador in our original letter, since his needs (as a result of his handicap) were not clearly communicated to University officials, it was difficult for them to ascertain what specific academic modifications he required.

However, we did find that University officials were made aware that he was recovering from a serious illness and as

a result made certain academic adjustments on his behalf. (Please refer to the letter dated October 31, 1980). Therefore, the weight of the evidence is insufficient to establish that Roosevelt University has discriminated against Mr. Salvador on the basis of his handicap in failing to make necessary modifications of its academic program.

The plaintiff then appealed the decision of the Regional Office on his two complaints to the Secretary who in turn referred the matter to officials in the headquarters office of the Department's Office for Civil Rights. On June 8, 1981, the Office for Civil Rights informed Salvador that, after a careful review of his complaints, it had determined that the conclusion of the Regional Office that Roosevelt had not violated his rights under Section 504 was correct. The Office of Civil Rights stated that Roosevelt did in fact take account of Salvador's recovery from a serious illness by allowing him to continue in its M.B.A. program even after he received his third "C," which normally resulted in termination. The Office of Civil Rights also noted that Roosevelt was not obligated to accommodate a handicap of the plaintiff of which it was not informed. This lawsuit followed.

*Discussion*

■ Section 504 of the Rehabilitation Act of 1973 provides as follows:

No otherwise qualified handicapped individual in the United States, as defined in section 706(6) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794. It thus requires recipients of federal funds not to discriminate against intended beneficiaries on the basis of handicap. The issue in this case is whether Section 504 provides those intended beneficiaries, i.e., those handicapped individuals who participate in programs offered by recipients of federal financial as-

sistance, with a private cause of action to secure their rights to non-discrimination against the Secretary of Education. Because the legislative scheme and the case law under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d,[2] upon which Section 504 was modeled, indicates that no such private right of action exists, this Court must dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim.

An amendment to Section 504 passed by Congress in 1978 specifically directs that the enforcement scheme of Title VI is to apply to Section 504 as well:

> The remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

29 U.S.C. § 794(a)(2). Section 603 of Title VI, 42 U.S.C. § 2000d–2, provides for the limits of judicial review available under Title VI and thus under Section 504. It provides:

> Any department or agency action taken pursuant to section 2000d–1 of this title shall be subject to such judicial review as may otherwise be provided by law for similar action taken by such department or agency on other grounds. In the case of action, not otherwise subject to judicial review, terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with

any requirement imposed pursuant to section 2000d–1 of this title, any person aggrieved (including any State or political subdivision thereof and any agency of either) may obtain judicial review of such action in accordance with chapter 7 of Title 5, and such action shall not be deemed committed to unreviewable agency discretion within the meaning of that chapter.

The first sentence of Section 603 does not authorize judicial review if judicial review is not already available by separate Congressional enactment. No separate Congressional provision for judicial review exists here, and thus the first sentence of Section 603 does not provide a cause of action in this case.

The second sentence of Section 603 grants a right of judicial review only to "any person aggrieved" by action that terminates or denies federal funding to a recipient or applicant for federal funds. That is, Roosevelt would have a cause of action against the Secretary if the Secretary terminated or threatened to terminate its federal funding for failure to comply with Section 504. But that is the converse of the circumstances of this case: here, plaintiff is seeking to sue the Secretary directly for Roosevelt's allegedly discriminatory conduct, not Roosevelt.

There is no doubt that a recipient or applicant of federal funds has a cause of action against the Secretary under Section 603. There is also no doubt that a beneficiary in Salvador's position has a private right of action against the recipient institu-

---

**2.** When Congress expanded the Rehabilitation Act's definition of "handicapped individual" in 1974, the Conference Report provided the following commentary on Section 504:

> Section 504 was patterned after, and is almost identical to, the anti-discrimination language of [titles VI and IX]. The section therefore constitutes the establishment of a broad government policy that programs receiving financial assistance shall be operated without discrimination on the basis of handicap. It does not specifically require the issuance of regulations or expressly provide for enforcement procedures, but it is clearly mandatory in form, and such regulations and enforcement are intended.

H.R.Rep. No. 1457, 93rd Cong., 2nd Sess. 27 (1974). Numerous court decisions have, in fact, looked to Title VI in construing Section 504. *See, e.g., Camenisch v. University of Texas,* 616 F.2d 127, 132 (5th Cir.1980, *vacated and remanded on other grounds sub. nom., University of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Brown v. Sibley,* 650 F.2d 760, 767–69 (5th Cir.1980); *Kling v. County of Los Angeles,* 633 F.2d 876 (9th Cir. 1980); *Simpson v. Reynolds Metal Co., Inc.,* 629 F.2d 1226 (7th Cir.1980); *Lloyd v. Regional Transportation Authority,* 548 F.2d 1277, 1280–81, 1285–86 (7th Cir.1977); *Cook v. Budget Rent-A-Car,* 502 F.Supp. 494, 500–01 (S.D.N.Y.1980).

tion.[3] But no private cause of action exists under Section 504 for a beneficiary against the Secretary.

Courts have recognized that the type of relief requested in this case against the federal defendants is inconsistent with the overall framework of statutes like Title VI and Section 504, and their implementing regulations. *Greater Los Angeles Council on Deafness v. Community Television of Southern California,* 719 F.2d 1017 (9th Cir.1983), *cert. denied, Gottfried v. United States,* — U.S. —, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984); *NAACP v. Medical Center Inc., supra,* 599 F.2d at 1250–59; *See also Community Brotherhood of Lynn, Inc. v. The Lynn Development Authority,* 523 F.Supp. 779 (E.D.Mass.1981); *Green Street Association v. Daley,* 250 F.Supp. 139, 146 (N.D.Ill.1966) *aff'd,* 373 F.2d 1, 8–9 (7th Cir.1967), *cert. denied,* 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995 (1967). Indeed, the Supreme Court has implied a private right of action by a beneficiary against a recipient of federal funds precisely because, *inter alia,* an action against an agency is "far more disruptive"

of its enforcement resources "than a private suit against the recipient ... could ever be." *Cannon v. University of Chicago,* 441 U.S. 677, 707 n. 41, 99 S.Ct. 1946, 1963, n. 41, 60 L.Ed.2d 560 (1979). For the same reason, courts have refused to allow private actions against the Equal Employment Opportunity Commission ("EEOC") to require investigation or reconsideration of particular complaints of employment discrimination, particularly because a private right of action is available directly to Title VII complaints. *Hall v. EEOC,* 456 F.Supp. 695, 699–700 (N.D.Calif.1978);[4] *Stewart v. EEOC,* 611 F.2d 679, 682 (7th Cir.1979); *Kelly v. EEOC,* 468 F.Supp. 417, 418 (D.Md.1979).

■ Because Salvador may pursue his private remedy against Roosevelt, the recipient institution, directly, and because a private right of action is inconsistent with the statutory scheme and the integrity of the Section 504 administrative process,[5] this Court holds that Salvador has no private right of action against the Secretary. In reaching a similar holding in the Title VI context, the court in *NAACP v. Medical*

---

**3.** In *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the Supreme Court held that Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (prohibition against sex discrimination in education programs or activities receiving federal financial assistance), implies a private remedy. The Court determined that Congress intended Title VI, after which both Title IX and Section 504 were modeled, to confer a private right of action upon the beneficiary to proceed directly against the discrimination. *Id.,* 441 U.S. at 694–709, 99 S.Ct. at 1956–1964. On the other hand, *Cannon* did not provide the beneficiary with a private right of action against the funding agency. *See also, Camenisch v. University of Texas, supra,* 616 F.2d at 130–33; *Brown v. Sibley, supra,* 650 F.2d at 766–67; *Kling v. County of Los Angeles, supra,* 633 F.2d at 878; and *NAACP v. Medical Center, supra,* 599 F.2d at 1258.

**4.** As the *Hall* court reasoned:
Congress could well have decided that it was preferable to preclude charging parties from suing the EEOC and send them directly to federal court to prosecute their charge, in order to avoid tying up the limited resources of the Commission in litigation against charging parties.
456 F.Supp. at 699.

**5.** The Section 504 regulations incorporate the regulatory procedures governing enforcement actions under Title VI of the Civil Rights Act of 1964. *See* 34 C.F.R. §§ 104.61, 100.6–100.10. The Title VI statute, 42 U.S.C. § 2000d–1, its implementing regulations, and the regulations implementing Section 504 each provide for an administrative enforcement mechanism in which the beneficiary's role is peripheral and limited. 34 C.F.R. §§ 100.6–100.11, 34 C.F.R. § 104.61. The beneficiary's right to file an administrative complaint of discrimination stems solely from the regulations implementing the Act. *See* 34 C.F.R. §§ 100.7(b), 104.61. The complaint process, however, does not vest any rights in the complainant; nor does it require the Department to act on the complainant's behalf. Rather, the complaint process only provides information which the Department can use to decide when and where to investigate. The filing of such a complaint triggers the administrative enforcement process. The beneficiary's complaint, however, is only one of several possible proceedings. *See, e.g.,* 34 C.F.R. §§ 100.7(c), 104.61. Consistent with the minimal administrative participation allowed the beneficiary within this framework, the implementing regulation does not provide for judicial review by disappointed complainants.

*Center, Inc., supra,* succinctly noted that this result:

> ... does no harm to beneficiaries' rights, as complete relief can be awarded without the agency being a party to the private suit, and complete discovery can be undertaken, since the agency has no more relevant information to impart than does the funding recipient, who is a party.

599 F.2d at 1254 n. 27.

Because this Court has held that the complaint must be dismissed for lack of subject matter jurisdiction and for failure to state a claim because a private right of action against the Secretary does not exist under Section 504, it need not and does not address the issues posed by the Secretary's alternative motion for summary judgment.

### Conclusion

According, Salvador's complaint is dismissed pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).