**Neil ABRAMSON, et al., Plaintiffs,**

v.

**William J. BENNETT, Defendant.**

**Civ. A. No. 88–2204.**

United States District Court, District of Columbia.

Feb. 27, 1989.

Neil Abramson, pro se.

Jay B. Stephens, U.S. Atty. and John D. Bates and Diane M. Sullivan, Asst. U.S. Attys., Washington, D.C., for defendant.

CHARLES R. RICHEY, District Judge.

Neil Abramson, the named plaintiff[1] in this suit, has a child who is an eighth grade student at the Crestwood Junior High School in the Commonwealth of Virginia. Mr. Abramson contends that the education his child is receiving at this school is inferior to that received by children in other schools in the Commonwealth. Mr. Abramson attributes the alleged inferior quality of his child's education at Crestwood to several factors; these factors include school district lines resulting in a largely black student population at Crestwood, the existence of an appointed rather than an elected school board in the Commonwealth, and a "two-tier secondary program" which awards more credits and better quality instruction to the higher achieving students.

Mr. Abramson maintains that the disparity between the quality of instruction at Crestwood and the other secondary schools in the Commonwealth is a violation of his child's rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d and 42 U.S.C. § 1983. As such, Mr. Abramson asks the Court to issue an Order directing the Secretary of Education to terminate all grants of federal funds to Virginia's public school system until the school system satisfies several conditions.[2]

---

**1.** The caption of the complaint filed in this action suggests that this is a class action. For the purpose of the motion that is now before the Court, it is immaterial whether this suit is a class action. It should be noted, however, that the findings in this Opinion are not solely applicable to the named plaintiff; they apply likewise to all children attending public schools in Virginia.

**2.** These conditions include the election of school board members, the provision of uniform educational opportunities for all students in the Commonwealth, the eradication of the two-tier program, the provision of comprehen-

Now before the Court is defendant's motion to dismiss this suit pursuant to Fed.R. Civ.P. 12(b)(1) (lack of subject matter jurisdiction), 12(b)(6) (failure to state a claim), and because of plaintiffs' lack of standing to bring this suit. Upon consideration of defendant's motion, the supporting and opposing legal memoranda, and the underlying law, the Court will grant defendant's motion.

Plaintiffs' Title VI claim raises the question of whether a court order directing a federal agency to terminate its funding of an entity or program allegedly engaging in discriminatory practices can be obtained through a private Title VI action against the agency. To examine this question, it is necessary to turn to the language and structure of Title VI. Section 601 of Title VI provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

42 U.S.C. § 2000d (1981).

Section 602 of Title VI establishes an elaborate administrative scheme for terminating the distribution of federal funds to entities or programs allegedly engaging in discrimination: this scheme includes the issuance of an agency rule, regulation or order approved by the President, notice and an opportunity to be heard, a determination that compliance with the terms of Title VI cannot be secured by voluntary means, the agency's filing of a report with the committees of the House and Senate having legislative jurisdiction over the activity or program at issue, and a 30–day delay period before any action can become effective. 42 U.S.C. § 2000d–1 (1981). Judicial review of agency decisions to terminate funding is provided for in Section 603. 42 U.S.C. § 2000d–2 (1981).

■ When a private plaintiff seeks to enjoin action by the alleged discriminator (the recipient of federal funds), it is now well-recognized that Title VI confers a private right of action for injunctive or declaratory relief against such a recipient. Section 601 of Title VI provides the basis for bringing such an action. *See, e.g., Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Lau v. Nichols,* 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974); *Bossier Parish School Board v. Lemon,* 370 F.2d 847 (5th Cir.), *cert. denied,* 388 U.S. 911, 87 S.Ct. 2116, 18 L.Ed.2d 1350 (1967).

However, it is less clear whether a private victim of discrimination can sue a funding agency under Title VI and bypass Title VI's administrative scheme for terminating the distribution of federal funds to an alleged discriminator. There is authority in this circuit for allowing a private Title VI action against a funding agency. In *Adams v. Richardson,*[3] certain black students, citizens, and taxpayers brought a Title VI action for injunctive and declaratory relief against the Secretary of Health, Education, and Welfare ("HEW") and the Director of HEW's Office of Civil Rights. The plaintiffs in *Adams* claimed that defendants were "derelict" in complying with Title VI because they failed to take appropriate action to end segregation in public educational institutions receiving funds.

■ In deciding that the plaintiffs in *Adams* could maintain a Title VI action against the funding agency, the Court of Appeals for this Circuit was primarily relying upon the fact that the suit was not one challenging "HEW's decisions with regard to a few school districts in the course of a generally effective enforcement program." *Id.* at 1162. Instead, the action was one in which plaintiffs alleged that the funding agency "ha[d] consciously and expressly adopted a general policy which is in effect an abdication of its statutory duty." *Id.* Unlike the complaint filed in *Adams,* the complaint filed by plaintiffs does not contain allegations that defendant has engaged in a general policy of consciously

---

sive instructional programs in all secondary schools within the Commonwealth, and the redrawing of school district lines.

3. 480 F.2d 1159 (D.C.Cir.1973).

neglecting his statutory responsibilities. For that reason, unlike the plaintiffs in *Adams,* the plaintiffs in this case may not institute an action for declaratory and injunctive relief against the agency. Instead, if they are committed to an action against the agency, they must pursue the administrative remedy specified in Section 602. 42 U.S.C. § 2000d–1 (1981).

Nevertheless, even assuming defendant had abdicated his statutory responsibilities, the Court would lack jurisdiction to grant the relief plaintiffs seek. *Adams* does not provide support for the granting of the relief plaintiffs are requesting, namely the issuance of an order directing the Secretary of Education to cease funding the public school system of the Commonwealth of Virginia. In *Adams,* the Court issued an injunction requiring the funding agency to institute compliance proceedings against some school systems and enforcement proceedings against others. The Court, however, explicitly stated that "[t]he injunction d[id] not direct the termination of any funds, nor can any funds be terminated prior to a determination of noncompliance." *Id.* at 1163.

Neither the language of Title VI nor its legislative history suggests that the *Adams* Court could have issued an injunction prohibiting the funding agency from continuing to fund the school districts which were allegedly engaging in discriminatory practices.

If the Federal Government may not cut off funds except pursuant to an agency rule, approved by the President, and presented to the appropriate committee of Congress for a layover period, and after voluntary means to achieve compliance have failed, it is inconceivable that Congress intended to permit individuals to circumvent these administrative prerequisites themselves.

*Regents of University of California v. Bakke,* 438 U.S. 265, 382–83, 98 S.Ct. 2733, 2795, 57 L.Ed.2d 750 (1978) (White, J., concurring in part and dissenting); *see also Cannon v. University of Chicago,* 441 U.S. 677, 715 n. 51, 99 S.Ct. 1946, 1967 n. 15, 60 L.Ed.2d 560 (1979) (explaining that the final version of Section 601 was "more conducive to the implication of a private remedy against a discriminatory recipient, but at the same time was arguably *less* conducive to implication of a private remedy against the Government ... to compel the cutoff of funds").

■ Because the issuance of an Order directing defendant to terminate its funding of Virginia's school system would encroach upon the powers of Congress and the President, the Court lacks jurisdiction to order such relief. Accordingly, the Court must dismiss plaintiffs' Title VI claim for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).[4]

■ In addition to their Title VI claim, plaintiffs are also seeking relief pursuant to 42 U.S.C. § 1983. That provision provides a remedy for the deprivation of constitutional rights by a person acting under color of the law of any state or the District of Columbia. Section 1983 only applies to state officials acting under color of state law. *See, e.g., District of Columbia v. Carter,* 409 U.S. 418, 424, 93 S.Ct. 602, 606, 34 L.Ed.2d 613 (1973); *Daly–Murphy v. Winston,* 837 F.2d 348, 355 (9th Cir.1987). Here, the defendant is a federal official acting under color of federal law. Accordingly, the Court must dismiss plaintiffs' section 1983 claim pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Finally, the doctrine of standing also prevents the Court from entertaining plaintiffs' suit. The doctrine of standing is based upon Article III of the Constitution, which limits the power of federal courts to the resolution of actual "cases" and "controversies." There are two prongs to the standing doctrine. The first prong requires the party bringing the action to

---

4. It should be emphasized that the Court's decision does not preclude plaintiffs from vindicating their Title VI rights. Plaintiffs may institute a private action against the school board for the Commonwealth of Virginia for a declaratory judgment or for an injunction against future discrimination. Plaintiffs may also trigger an agency investigation of the Virginia school system pursuant to Section 602 of Title VI and its implementing regulations.

"show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). The second prong is that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976).

■ Accepting the allegations in plaintiffs' complaint as true, there is no question that plaintiffs have personally suffered an injury. It is questionable, however, whether a favorable decision would cure the allegedly discriminatory practices of which plaintiffs complain. The "line of causation" between the provision of federal grants to the Virginia school system and the school system's allegedly discriminatory practices is "attenuated at best." *Allen v. Wright*, 468 U.S. 737, 757–58, 104 S.Ct. 3315, 3327–28, 82 L.Ed.2d 556 (1984). At bottom, the Virginia school system, which is not before the court, is the party directly responsible for instituting the practices that plaintiffs claim are discriminatory. *Id.* (citing *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976)). Thus, even if the plaintiffs were successful in terminating the Virginia school system's federal funding, there can be no assurance that the system's alleged discrimination would cease as a result. For this reason, it does not appear to the Court that the relief plaintiffs seek would necessarily redress the injury of which the plaintiffs complain. Accordingly, the Court concludes that plaintiffs do not have standing to bring this suit.

The Court will issue an Order of even date herewith memorializing these findings.

## ORDER

In accordance with the Court's Opinion of even date herewith, it is, by the Court, this 24 day of February, 1989,

ORDERED that defendant's motion to dismiss plaintiffs' Title VI claim pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction shall be, and hereby is granted; and it is

FURTHER ORDERED that defendant's motion to dismiss plaintiffs' section 1983 claim pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted shall be, and hereby is, granted; and it is

FURTHER ORDERED that plaintiffs' Title VI and section 1983 claims shall be, and hereby are, dismissed because plaintiffs' do not have standing to bring these claims; and it is

FURTHER ORDERED that this case stands dismissed from the dockets of this Court.