**Sanford GRIMES and Janelle Grimes, Minors, By and Through Lynda GRIMES and Sanford Grimes, their best friends, et al., Plaintiffs,**

v.

**Lauro CAVAZOS, Secretary of Education, United States Department of Education, et al., Defendants.**

No. 90 Civ. 4539 (KMW).

United States District Court, S.D. New York.

March 12, 1992.

Joseph Fleming, New York City, for plaintiffs.

Anne Ehrenkranz, Asst. Atty. Gen., N.Y.S. Law Dept., David L. Lock, Asst. Corp. Counsel, Steven I. Froot, Asst. U.S. Atty., New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Plaintiffs, members of a putative class of all African–American public school students in New York City, bring this action pursuant to 42 U.S.C. §§ 1981 and 1983, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. They name as defendants the Secretary of Education and the U.S. Department of Education ("the federal defendants"); Thomas Sobol, the New York State Commissioner of Education, and the New York State Education Department ("the State defendants"); and Joseph Fernandez, Chancellor of the New York City Public Schools, and the New York City Board of Education ("the City defendants"). Plaintiffs' complaint seeks declaratory and injunctive relief as a means of remedying an allegedly systematic bias in the curriculum of New York City schools favoring European culture and disfavoring non-European cultures. Complaint ¶ 8. Plaintiffs allege that through its implied message of African–American inferiority, this curriculum, imposed by the state and the city, causes emotional injury to African–American students attending public schools in New York. The effects of the harm caused by the allegedly biased curriculum allegedly manifest themselves in a variety of social problems such as high crime and dropout rates among African–American youth. *Id.* ¶¶ 9–11. Plaintiffs seek an order enjoining defendants from "employing any curriculum or course of study created or selected in a racially discriminatory manner, or which will have the effect of continuing, or implementing a discriminatory curriculum in the city of New York." *Id.* p. 6, ¶ 2. Plaintiffs also seek an order from this court directing defendants to develop a multicultural curriculum that would recognize the "true participations and contributions of African–Americans and other non-whites." *Id.* ¶ 3. Plaintiffs also request the court to "end the employment of Federal financial assistance in connection with and in support of the racially discriminatory aspects" of the curriculum. *Id.* p. 9, ¶ 1.

Defendants move to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), and for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the court grants defendants' motions. The court also grants plaintiffs permission to replead their complaint against defendants Thomas Sobol, Commissioner of Education of the State of New York; the New York State Education Department; Joseph A. Fernandez, Chancellor, New York City Public Schools; and the New York City Board of Education.

### Discussion

The federal defendants move to dismiss the complaint for lack of subject matter

jurisdiction and for failure to state a claim. They base this motion on several grounds: (1) that plaintiffs lack standing to sue the Secretary of Education ("the Secretary"); (2) that plaintiffs do not have a private right of action against the Secretary under Title VI; (3) that plaintiffs have failed to state a claim under either Title VI or under 42 U.S.C. § 1983. The State defendants also move to dismiss for lack of subject matter jurisdiction and for failure to state a claim. The City defendants move to dismiss only for failure to state a claim.

The Court will first address the standing issue as it relates to all three defendants, then turn to the other issues raised by the federal defendants' motion, and then consider the other issues raised by the State and the City defendants.

## I. Standing

■ The "threshold question" in any suit in federal court is whether the court has the authority to adjudicate the dispute. *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1346 (2d Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). This question, which reflects the limited nature of federal judicial authority, has both constitutional and prudential dimensions; the former flows from the Article III requirement that federal courts hear only actual "cases" or "controversies," while the latter flows from notions of the limited role of the judiciary in our society. *Id.; see Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). In *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), like the instant case an action against a government agency for allegedly unlawful conduct, the Supreme Court articulated the requirements that a plaintiff seeking to invoke the jurisdiction of the federal court must meet. The plaintiff must allege (1) a distinct and palpable personal injury suffered as a result of the defendant's allegedly illegal conduct, (2) that is fairly traceable to the defendant's challenged conduct, and (3) that is likely to be redressed by grant of the requested relief. *Id.* at 751, 104 S.Ct. at 3324; *Terry*, 886 F.2d at 1346–47; *Southside Fair Housing Comm. v. City of New York*, 928 F.2d 1336, 1341–43 (2d Cir.1991).

### A. Injury

■ The core of plaintiffs' alleged injury is that because of the nature of the curriculum that they or their children must study, they have suffered "severe mental and emotional harm." Complaint, ¶ 9. The State defendants argue that while the alleged conduct may have resulted in plaintiffs' experiencing a "deep feeling of dislike," such a feeling does not amount to a judicially cognizable injury. State Def. Reply Mem. at 4. Fairly read, however, the complaint and the affidavits submitted to the court[1] allege that plaintiffs have suffered psychological harm and thus a diminished ability to receive an education, as a result of an allegedly biased curriculum. In essence, they allege that the current curriculum singles out and stigmatizes plaintiffs on account of their race. Whether they can prove this injury is not the issue on a motion to dismiss. The United States Supreme Court has repeatedly held that such an injury is "not only judicially cognizable but, as shown by cases from *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), to *Bob Jones University v. United States*, 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983), one of the most serious injuries recognized in our legal system." *Allen v. Wright*, 468 U.S. at 756, 104 S.Ct. at 3327. The court has no doubt that plaintiffs have alleged a sufficiently distinct, palpable, and concrete injury.

The requirement that plaintiffs allege a "distinct and palpable" injury is only one part of the injury prong of the standing requirement. Plaintiffs must also allege a *personal* injury, that is, that they themselves suffer or have suffered the harm alleged. This requirement is not met merely by plaintiffs' decision to bring this suit

---

**1.** A court may consider evidentiary material outside the complaint for purposes of a motion to dismiss for lack of subject matter jurisdiction pursuant to F.R.Civ.P. 12(b)(1). *Kamen v. American Tel. & Tel.*, 791 F.2d 1006, 1011 (2d Cir.1986).

as a class action. *See Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976) ("That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong'" (quoting *Warth*, 422 U.S. at 502, 95 S.Ct. at 2207)). Plaintiffs have, for purposes of a motion to dismiss, satisfied this requirement. For example, in an affidavit submitted with plaintiffs' motion papers, named plaintiff Lynda Grimes, who sues on behalf of her minor children, maintains that:

> my children have, all of their school lives, been subjected to a school system that has negatively impacted upon their self-esteem, pride and sense of self-worth by failing to allow my children to learn that African Americans have contributed in any way to the development of the United States and the world and by teaching my children that only Europeans or those of European descent have accomplished anything or contributed anything to the world order.

Aff. of Lynda Grimes, ¶ 5. Ms. Grimes does not describe an injury suffered by a third party, or one that her children might someday suffer; it is not the kind of "conjectural" or "hypothetical" claim that the personal injury requirement aims to discourage. *See Allen*, 468 U.S. at 751, 104 S.Ct. at 3324; *Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983). Instead, she describes a judicially cognizable injury that she and her children allegedly suffered as a result of defendants' allegedly discriminatory conduct. As such, it suffices to satisfy the injury prong of the test for standing.

**B. Is the Injury "Fairly Traceable" to Defendants' Conduct?**

**1. Federal Defendants**

■ The federal defendants contend that plaintiffs have established no causal link between the actions of the State and City defendants, on the one hand, and the Secre-

tary and the Department of Education, on the other. Thus, the federal defendants argue, the injury alleged is not "fairly traceable" to their conduct, and cannot confer on plaintiffs standing to sue the federal defendants.

The basis for plaintiffs' allegations against the federal defendants is that the Secretary is charged with the duty to enforce the mandates of Title VI. Complaint ¶ 5, p. 3. At a later point in the complaint, plaintiffs allege that the State and City defendants receive federal funds "for the operation of and otherwise in support of the public school system and propose to use such assistance inter alia to support the implementation and maintenance of its existing curriculum." *Id.* ¶ 14, p. 8. The next paragraph of the complaint alleges that "by reason of the facts hereinabove alleged, and particularly by reason of the use of Federal financial assistance by Defendants," plaintiffs have suffered irreparable injury. *Id.* ¶ 15, p. 8. The complaint includes no further allegation against the federal defendants that would link them to the allegedly discriminatory conduct of the State and the City defendants. In fact, plaintiffs offer no explanation of how actions taken (or even inaction) by the Secretary or his agents caused the injury plaintiffs allegedly suffered, and thus do not demonstrate how this injury is fairly traceable to the federal defendants' conduct. *See Allen v. Wright*, 468 U.S. at 753 n. 19, 104 S.Ct. at 3325 n. 19 ("fairly traceable" prong requires examination of the causal connection between the assertedly unlawful conduct and the alleged injury).

Faced with a similar set of circumstances, another district court recently ruled that the parent of a Virginia junior high school student did not have standing to sue the Department of Education. *Abramson v. Bennett*, 707 F.Supp. 13, 16–17 (D.D.C.) *aff'd*, 889 F.2d 291 (D.C.Cir. 1989). In *Abramson*, the named plaintiff alleged that a variety of discriminatory practices resulted in his son receiving an education that was inferior to that received by students in other schools in Virginia in violation of Title VI. Plaintiffs asked the

court to order the Secretary of Education to terminate all grants of federal funds to Virginia's public school system until the school system rectified the situation. *Id.* at 14. The court concluded that plaintiffs did not have standing to bring the suit because "the 'line of causation' between the provision of federal grants to the Virginia school system and the school's allegedly discriminatory practices is 'attenuated at best.'" *Id.* at 17 (quoting *Allen v. Wright,* 468 U.S. at 757–58, 104 S.Ct. at 3327–28). Plaintiffs in the case at bar stand in a similar position. They have not alleged that the federal defendants have any role either in the day-to-day operation of the city schools, or in the setting of policy on a city or statewide basis. Indeed, the Department of Education is specifically precluded from such involvement by statute. 20 U.S.C. § 3403(b). Accordingly, the court finds that the injury plaintiffs allege is not fairly traceable to the federal defendants' actions and thus that plaintiffs do not have standing to bring this suit against the federal defendants.[2] *See Allen,* 468 U.S. at 759, 104 S.Ct. at 3328 (suits challenging particular programs federal agencies establish to carry out their legal obligations "rarely if ever appropriate for federal-court adjudication"). The motion to dismiss for lack of subject matter jurisdiction brought by the federal defendants is granted.

### 2. State Defendants

■ The State defendants similarly argue that plaintiffs have no standing to bring this action against them because the complaint fails to allege any injury that is fairly traceable to Commissioner Sobol's or the State Education Department's allegedly unlawful conduct. State Defendant's Mem. of Law at 4–6. While the state thus makes the same argument as the federal defendants, and the court's analytical approach is the same in both cases, the results differ due to the different roles of the two sets of defendants in the educational system.

In sketching the contours of its standing jurisprudence, the Supreme Court has suggested a difference between a court evaluating standing in the context of a motion to dismiss, and a court evaluating standing in the context of a motion for summary judgment. *See Simon,* 426 U.S. 45 n. 25, 96 S.Ct. 1927 n. 25; *United States v. SCRAP,* 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1973). Where, as here, defendants have moved to dismiss on the basis of the pleadings alone, the court may not dismiss the complaint unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). This standard applies both to a motion to dismiss for failure to state a claim, and to a motion to dismiss for lack of subject matter jurisdiction. *Hospital Bldg. Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 742 n. 1, 96 S.Ct. 1848, 1851 n. 1, 48 L.Ed.2d 338 (1976); *Simon,* 426 U.S. at 55 n. 6, 96 S.Ct. at 1932 n. 6 (Brennan, J., concurring).

In their complaint, plaintiffs allege that "Thomas Sobol, as Commissioner of Education of the State of New York ... [has] administrative jurisdiction of and responsibility for the public schools in the City of New York," and is charged under Title VI with "the obligation to provide African American students with equality of educational opportunity and benefits free from mental and emotional injury." Complaint ¶ 5, p. 3. From this allegation, a court may infer that Commissioner Sobol has sufficient control or influence over the New York City School System to impose changes in the curriculum, and that plaintiffs' alleged injuries are thus fairly traceable to him and likely to be redressed by the requested relief. In reality, this may or may not be the case. The *allegation* does suffice, however, to survive a motion to dismiss for lack of standing. The Court finds that plaintiffs have standing to bring

---

**2.** In light of the court's conclusion with regard to this prong of the three-part *Allen* test for standing, it need not address the third prong, whether defendants' alleged injury is likely to be redressed by the requested relief.

this suit against the State defendants,[3] and the motion to dismiss the State defendants pursuant to Fed.R.Civ.P. 12(b)(1) is therefore denied.[4]

## II. Additional Issues Raised by the Federal Defendants' Motion

### A. Private Right of Action

■ Alternatively, even if this court had found that plaintiffs had standing to sue the federal defendants, Title VI affords no remedy to plaintiffs because it does not create a private right to sue the Department of Education or the Secretary to terminate funding to an allegedly discriminatory entity or program. Title VI prohibits discrimination against individuals on the basis of race or national origin in programs or activities receiving federal financial assistance. 42 U.S.C. § 2000d.[5] Plaintiffs allege that the federal defendants have violated their rights under this statute by failing to enforce Title VI's anti-discrimination mandate against the City and State defendants by "allow[ing] the expenditure of funds in support of a program that discriminates." Def. Mem. of Law in Opp. at 6. The result of this failure, plaintiffs argue, has been to perpetuate the harm caused by the use of a discriminatory curriculum. The question on this motion is thus whether Title VI allows plaintiffs to sue the funding agency directly to force it to terminate funding.

Title VI does not explicitly confer a right to sue a federal agency that funds the allegedly discriminatory program or entity (and indeed plaintiffs do not contend otherwise). The next inquiry is whether the court can *infer* the existence of a private right of action. In considering this question, it is important to note that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private right of action in favor of that person." *Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1952, 60 L.Ed.2d 560 (1979). In *Cannon*, the Court held that Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, modelled on Title VI, conferred an implied right of action on the beneficiary of a federally funded program allowing her to bring suit directly against the alleged discriminator who was the recipient of the federal funding. The Court did not, how-

3. The City defendants do not challenge plaintiffs' standing to bring this action.

4. State Defendants also assert that the issues raised in the complaint are non-justiciable because they would require the Court to become involved in the design of school curricula in a manner that would exceed the Court's competence and the Court's power.

A federal court's competence and power in this area are limited. *Board of Education v. Pico*, 457 U.S. 853, 864, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (plurality op. of Brennan, J.) ("... federal courts should not ordinarily 'intervene in the resolution of conflicts which arise in the daily operation of school systems'") citing *Tinker v. Des Moines School Dist.*, 393 U.S. 503, 507, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). Without reaching any conclusive opinion on this point, we are inclined to agree with State defendants that some—perhaps all—of the relief sought by plaintiffs may fall outside of those limits. Notwithstanding this, however, we recognize that not *all* remedies impacting on a school curriculum exceed a federal court's power. For example, when the state of Arkansas passed a statute excluding evolutionary science from its curriculum, the Supreme Court struck down that statute. *Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

While *Epperson* was grounded in the First Amendment and not in the Equal Protection Clause, which is at issue in this case, *Brown* and its progeny leave no question that federal courts have at least some power to enforce the Equal Protection Clause of the Fourteenth Amendment in the setting of public schools, even if the exercise of that power may impinge on what is normally viewed as the sphere of state and local authorities.

We believe that, in light of the complexity of this issue, and in light of our decision, *infra*, that plaintiffs have not succeeded in pleading a cause of action, it is unnecessary and premature to decide the extent of any judicial power to shape relief in this area. Given the possibility that in some circumstances courts might have such power, we believe it is appropriate to assume subject matter jurisdiction merely for the purpose of granting a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

5. Section 601 of Title VI of the Civil Rights provides:

No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

ever, find that Title IX provided the beneficiary with a private right of action *against the funding agency.* Although the Court addressed this issue only indirectly, it observed that such a remedy would be inconsistent with the structure and purposes of the statute. Scrutinizing the legislative history of Title VI in some detail,[6] the *Cannon* Court noted that the version of the statute ultimately passed by Congress represented "a compromise aimed at protecting individual rights without subjecting the Government to suits." *Id.* at 715, 99 S.Ct. at 1967. Allowing a right of action against the funding agency, the Court reasoned, would prove "far more disruptive" of the agency's efforts to enforce the statute than a "private suit against the recipient of the federal aid could ever be." *Id.* at 707 n. 41, 99 S.Ct. at 1963 n. 41. These comments strongly suggest that implying a right of action on behalf of plaintiffs against the funding agency would be inconsistent with the Court's interpretation of the statute and the manner in which Congress intended it to operate.

The elaborate administrative scheme established by Title VI, and its implementing regulations that provide for terminating the distribution of federal funds to institutions or programs allegedly engaging in discrimination, further support the Secretary's argument that the statute does not imply a right of action in favor of plaintiffs against the Department of Education. Section 602 of Title VI, 42 U.S.C. § 2000d–1, directs federal agencies to implement Title VI and provides that agencies may enforce compliance by cutting off the federal funds or by other means authorized by law. Before a funding agency, such as the Department of Education in this case, may terminate funding, however, the statute requires that the allegedly discriminatory recipient of funds receive notice and an opportunity to be heard. The statute also requires an express finding of noncompliance with Title VI by the agency, an agency determination that voluntary compliance cannot be secured, notification to Congress that the

agency plans to terminate federal funding, and a 30 day delay period before any termination action can become effective. *Id.* at § 2000d–1; *see Abramson v. Bennett,* 707 F.Supp. at 15. Section 603 of Title VI adds a limit on the enforcement mechanism in Section 602 by providing for judicial review of agency enforcement decisions. 42 U.S.C. § 2000d–2.

To allow beneficiaries, including plaintiffs in this case, to sue the funding agency would allow them to circumvent this elaborate procedure, and the delicate legislative compromises it embodies. *See NAACP v. Medical Center, Inc.,* 599 F.2d 1247, 1254 n. 27 (3d Cir.1979). This result could, in effect, compel an agency to terminate funding without affording the funding recipient the protections built into Sections 602 and 603 of Title VI, a result that one court has labelled "impermissible." *Id.* Failure to imply a private right of action does not undermine the broad remedial purposes of the statute, nor does it prevent beneficiaries of federal funding from vindicating their rights. They can still obtain complete relief under Title VI against funding recipients (here the state and the city) without the federal government agency as a party. Funding beneficiaries may also trigger an agency investigation under Section 602.

There does not appear to be any precedent in this Circuit directly addressing this issue. The Second Circuit, however, has considered the analogous question of whether Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, contains an implied right of action against the funding agency. *Marlow v. United States Dep't of Educ.,* 820 F.2d 581 (2d Cir.1987), *cert. denied,* 484 U.S. 1044, 108 S.Ct. 780, 98 L.Ed.2d 866 (1988). Acknowledging that Congress modelled Section 504 on Title VI, the court refused to imply a cause of action under Section 504 by a beneficiary against a federal funding agency because to do so would be " 'inconsistent with the statutory scheme and the integrity of the Section 504 administrative process.' " *Id.* at 583 (quot-

---

**6.** At certain points in its discussion, the *Cannon* Court assumed for the purposes of argument the respondents' "... premise that Title IX and Title VI should receive the same construction ..." *Cannon,* 441 U.S. at 710, 99 S.Ct. at 1964.

ing *Salvador v. Bell,* 622 F.Supp. 438, 442 (N.D.Ill.1985), *aff'd sub nom., Salvador v. Bennett,* 800 F.2d 97 (7th Cir.1986)). Given the similarity between Section 504 of the Rehabilitation Act and Title VI, this court believes that it is bound to apply the holding of the court in *Marlow* to Title VI, the statute at issue in this case.

The Court's holding that Title VI does not contain an implied right of action is consistent with the weight of the precedent outside of this Circuit. The decisions cited by plaintiffs in support of their argument that Title VI does provide a private right of action do not undercut this holding. All but one of the decisions cited by plaintiffs were decided before the Supreme Court's decision in *Cannon.* Further, as the court in *Marlow* recognized, 820 F.2d at 583, those few (pre-*Cannon* ) cases that have allowed a private right of action against the funding agency under Title VI all involved extraordinary circumstances. *See, e.g., Adams v. Richardson,* 480 F.2d 1159, 1162 (D.C.Cir.1973) (en banc, per curiam) (agency had "consciously and expressly" abdicated its enforcement responsibilities); *Shannon v. Dep't of Housing and Urban Dev.,* 436 F.2d 809, 817, 820 (3d Cir.1970) (allegations that agency used improper procedures for approving funding programs); *Gautreaux v. Romney,* 448 F.2d 731, 740 (7th Cir.1971) (allegations that agency knowingly acquiesced or actively participated in discriminatory practices). The one post-*Cannon* decision that supports plaintiffs' contention involved allegations that the federal funding agency knowingly acquiesced in the racially discriminatory housing practices of local housing authorities in Texas. *Young v. Pierce,* 544 F.Supp. 1010, 1012 (E.D.Tx.1982). Plaintiffs' complaint here makes no such allegations. At most, it alleges non-feasance on the part of the Secretary and his agents. Plaintiffs are thus limited to a judicial remedy against the State and City defendants or, if they wish to involve the Department of Education, must pursue the administrative remedy set forth in the statute. Accordingly, even if plaintiffs had standing to sue the federal defendants, because the Court finds that Title VI does not imply a

right of action in favor of plaintiffs against the Department of Education, the Court would nonetheless be compelled to grant the federal defendants' motion to dismiss for failure to state a claim.

### B. Section 1983

In addition to their Title VI claim, plaintiffs seek equitable relief against the Secretary pursuant to 42 U.S.C. § 1983. That provision provides a right of action where a person acting under color of state law has deprived a person of constitutional or statutory rights. By its terms it applies only to *state* officials acting under color of *state* law. *District of Columbia v. Carter,* 409 U.S. 418, 424, 93 S.Ct. 602, 606, 34 L.Ed.2d 613 (1973); *Abramson v. Bennett,* 707 F.Supp. at 16. Here, the Department of Education is a federal agency, and the Secretary is a federal official acting under color of federal law; plaintiffs have not alleged otherwise. Plaintiffs' § 1983 claims against the federal defendants must thus be dismissed for failure to state a claim.

### III. State and City Defendants' Motions to Dismiss

#### A. Section 1983 Claim

Both the City and State defendants argue that even accepting as true all of plaintiffs' allegations regarding the biased nature of the public school curriculum, the complaint fails to state a claim upon which relief may be granted. Plaintiffs respond by arguing that their claim is merely the logical extension of the holding of the Court in *Brown v. Board of Education,* 347 U.S. at 493, 74 S.Ct. at 691, that "a sense of inferiority affects the motivation of a child to learn." While the *Brown* decision viewed segregated schools as responsible for this sense of inferiority, plaintiffs here contend that the allegedly biased curriculum is responsible for their being taught to feel a similar sense of inferiority. As a result, plaintiffs contend, the defendants' adoption of, and failure to correct, a biased curriculum violates the Equal Pro-

tection Clause of the Fourteenth Amendment and Title VI.

It is axiomatic that plaintiffs charging a violation of the Equal Protection Clause must show intent to discriminate on the part of defendants. *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 265–70, 97 S.Ct. 555, 563–66, 50 L.Ed.2d 450 (1977); *Washington v. Davis*, 426 U.S. 229, 240–42, 96 S.Ct. 2040, 2047–48, 48 L.Ed.2d 597 (1976). Nowhere in the complaint in this case do plaintiffs allege the requisite intent. Attempting to remedy this problem in their opposition papers, plaintiffs first point to a number of studies that they maintain served to alert defendants to the harmful effects of the "exclusionary and biased" curriculum on African American children. They then make two related arguments that they have satisfied the intent requirement. Plaintiffs contend that defendants, armed with this information, nonetheless failed to correct the effects of the curriculum. The simple act of including certain information in the curriculum and excluding other information requires a choice. In making that choice, plaintiffs contend, defendants have consistently excluded information regarding African Americans; this choice thus reflects the requisite discriminatory intent.

Plaintiffs' second argument flows from the notion that defendants are liable for the foreseeable consequences of their actions. Plaintiffs argue that in light of the numerous studies describing the harmful effects of a biased curriculum on African American children, the logical consequence of defendants' failure to change the curriculum was harm suffered by plaintiffs and members of the plaintiff class. Plaintiffs also argue that this court should not decide the issue of intent on a motion to dismiss, but rather should make such a determination only after a full presentation of the facts.

Plaintiffs' arguments misconstrue the notion of intent as the Supreme Court has outlined it, and thus do not surmount the threshold necessary to survive a motion to dismiss. It is true that at one point courts viewed intent in the equal protection context as akin to intent in tort law, allowing plaintiffs suing under the Equal Protection Clause to establish intent by way of proof of "actions taken, coupled with omissions made, by governmental authorities which have the natural and foreseeable consequence of causing segregation." *Hart v. Community School Brd.*, 512 F.2d 37, 50 (2d Cir.1975). Today, however, while foreseeable results are one type of relevant evidence of intent, foreseeability alone is not enough to prove the existence of a constitutional violation. *Lora v. Board of Educ.*, 623 F.2d 248, 250–51 (2d Cir.1980). Similarly, that defendants knew or should have known that their failure to alter the curriculum to remove the alleged bias would have an adverse impact on plaintiffs does not suffice to show the requisite discriminatory intent or purpose. "Discriminatory purpose ... implies more than intent as volition or intent as awareness of consequences." *Soberal–Perez v. Heckler*, 717 F.2d 36, 42 (2d Cir.1983) (quoting *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979)). To establish intentional discrimination, a plaintiff must show that "the decisionmaker ... selected or reaffirmed a particular course of action at least in part *because of* not merely *in spite of* its adverse effects upon an identifiable group." *Feeney*, 442 U.S. at 279, 99 S.Ct. at 2296 (emphasis added). As in *Soberal–Perez*, 717 F.2d at 42, plaintiffs in the present case have failed to show that they can allege in good faith, much less prove, discriminatory intent sufficient to meet this admittedly rigorous standard. As a result, the court grants the State and City defendants' motions to dismiss the § 1983 claim pursuant to Fed.R.Civ.P. 12(b)(6).

**B. Title VI**

In *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 608, 103 S.Ct. 3221, 3235, 77 L.Ed.2d 866 (1983), the Supreme Court addressed the question of whether discriminatory intent is a necessary element of a claim under Title VI. While there was no majority opinion in *Guardi-*

*ans*, we are guided by the Court's subsequent discussion of *Guardians* in *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). Writing for a unanimous Court, Justice Marshall explained that *Guardians* should be understood to require a showing of intent for an action under Title VI itself, but not to require a showing of intent for an action under the regulations implementing Title VI:

> ... a two-pronged holding on the nature of the discrimination proscribed by Title VI emerged in [*Guardians*]. First, the Court held that Title VI itself directly reached only instances of intentional discrimination. Second, the Court held that actions having an unjustifiable disparate impact on minorities could be redressed through agency regulations designed to implement the purposes of Title VI.

*Alexander*, 469 U.S. at 293, 105 S.Ct. at 716 (footnotes omitted); *see id.* at 293, nn. 8, 9, 105 S.Ct. at 716, nn. 8, 9 (enumerating votes in *Guardians* that supported each prong of analysis).

The two-level analysis described in *Alexander* was applied by the Seventh Circuit in *Gomez v. Illinois State Dept. of Educ.*, 811 F.2d 1030, 1040 (7th Cir.1987), and in this District in *Fulani v. League of Women Voters Educ. Fund*, 684 F.Supp. 1185, 1193 (S.D.N.Y.1988). In *Gomez*, the Seventh Circuit affirmed a district court's dismissal of a Title VI cause of action under Fed.R.Civ.P. 12(b)(6), because there was no allegation of intent. However, the Court reversed the district court's dismissal of the plaintiffs' claim under the regulations implementing Title VI, holding that a showing of intent was not necessary under the regulations. *Gomez*, 811 F.2d at 1044–45. Similarly, in *Fulani*, Judge Sweet rejected the plaintiffs' Title VI claim summarily because of the absence of a showing of intent, but went on to consider whether there was a disparate-impact showing under the regulations. *Fulani*, 684 F.Supp. at 1193–94.

The complaint in this case does not plead a violation of the regulations implementing Title VI, but only alleges violation of Title VI itself. Because the Title VI claim does not allege discriminatory intent, it is dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

## C. Section 1981

■ Plaintiffs also sue under 42 U.S.C. § 1981. The precedent plaintiffs cite in support of their claim under this statute, however, is outdated. In *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 2372–73, 105 L.Ed.2d 132 (1989), a decision issued subsequent to the precedent plaintiffs cite, the Supreme Court made clear that § 1981 protects two rights: the right to make contracts, and the right to enforce them. "Where an alleged act of discrimination does not involve the impairment of one of these specific rights, § 1981 provides no relief." *Id.* 109 S.Ct. at 2372. Plaintiffs' claim does not involve either of the two enumerated rights, and thus must fail. Plaintiffs' § 1981 claims are hereby dismissed.

## *Conclusion*

For the reasons set forth above, the Court grants the federal defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), and grants the motions of the City and State defendants to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). However, in light of Congress' admonition that leave to amend pleadings "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), the Court grants Plaintiffs leave to amend the complaint with respect to the State defendants and the City defendants. If the plaintiffs wish to file an amended complaint they shall do so within sixty days of this opinion.

The Clerk of the Court is directed to enter judgment dismissing the complaint against defendants Lauro Cavazos, Secretary of Education, and United States Department of Education.

SO ORDERED.