The FREEDOM REPUBLICANS,
INC., et al., Plaintiffs,

v.

FEDERAL ELECTION COMMISSION,
Defendant.

Civ. A. No. 92–153 (CRR).

United States District Court,
District of Columbia.

April 7, 1992.

Frederic R. Kellogg, Washington, D.C., for plaintiffs.

Lawrence M. Noble, Gen. Counsel, Richard B. Bader, Associate Gen. Counsel, Stephen E. Hershkowitz, Asst. Gen. Counsel, and V. Colleen Miller, Federal Election Com'n, for defendant.

## MEMORANDUM OPINION AND ORDER

CHARLES R. RICHEY, District Judge.

In the instant lawsuit, the Freedom Republicans [1] make two principal claims against the Federal Election Commission (FEC). First, the Freedom Republicans claim that the Defendant Federal Election Commission (FEC) has failed to adopt rules and regulations implementing Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., [2] and they request that this Court order the FEC to embark upon such a rulemaking process. *See* Complaint at Count I. Secondly, the Plaintiffs contend that Title VI prohibits the FEC from providing any money to the Republican Party for its August 17–20, 1992 National Convention in Houston, Texas, because the Republican Party's "auxiliary" delegate system discriminates against African–American members of the Republican Party. *See* 42 U.S.C. § 2000d–1 (establishing procedures whereby federal funding is withdrawn when money perpetuates discrimination). *See* Complaint at Count II.

The Plaintiffs have moved for partial summary judgment on Count I of its Complaint, asking the Court to remand this matter to the FEC with directions that the agency adopt rules enforcing the provisions of Title VI. The FEC has moved to dismiss the entire Complaint, claiming, *inter alia*, that the Plaintiffs do not have standing, have not exhausted their administrative remedies and that Title VI does not apply to the FEC. Upon consideration of the parties' Motions, the record herein, the applicable law and contentions advanced at the oral argument on March 23, 1992, the Court shall grant the Plaintiffs' Motion for Partial Summary Judgment and shall remand this matter to the agency with directions to begin the rulemaking process in order to adopt rules implementing the provisions of Title VI of the Civil Rights Act of 1964.

■■■ Prior to considering the merits of the claims with respect to Title VI, it is necessary to consider the FEC's assertions that the Plaintiffs have no standing to bring this lawsuit. In *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the Supreme Court established a three-part test for organizational standing. [3] Under this test, an organization may sue on behalf of its members if: (1) its members would otherwise have standing; (2) the interests to be protected are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members. *Id.* 97 S.Ct. at 2441. The Plaintiffs meet each prong of the *Hunt* test.

First, individual members of the group could have otherwise maintained an action.

---

1. The Freedom Republicans are members of the Republican Party committed to "maintaining the historic commitment of the Republican Party (the "Party") to the advancement of Americans of African descent, and with developing a genuinely representative organization for the Party without regard to race, color, or national origin." Complaint at ¶ 3.

2. Title VI, which is codified at 42 U.S.C. § 2000d, provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Under 42 U.S.C. § 2000d–1, "[e]ach Federal depart-

ment and agency which is empowered to extend federal financial assistance to any federal program or activity, by way of grant, loan, or contract ... is authorized and directed to effectuate the provisions of section 2000d ... by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken."

3. Although Lugenia Gordon is also named as a Plaintiff in the above-captioned case, she sues only in her capacity as President of the Freedom Republicans. Complaint at ¶ 4. Thus, the standing of the Freedom Republicans, as a group, is critical to the standing inquiry.

It is beyond cavil that Title VI of the Civil Rights Act of 1964 endeavors to protect all Americans from invidious discrimination, particularly those Americans of African descent who have long suffered abuses on the basis of race. Title VI entitles the Plaintiffs to a private right of action against the agency for dereliction of its enforcement duties. *See Abramson v. Bennett*, 707 F.Supp. 13, 15–16 (D.D.C. 1989), *aff'd*, 889 F.2d 291 (D.C.Cir.1989). These individual Freedom Republicans have "alleged such a personal stake in the controversy as to warrant *his* [or her] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his [or her] behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). At oral argument, Plaintiffs' counsel made clear that members of the Freedom Republicans have sought to become delegates over a number of years, only to be relegated to the allegedly discriminatory auxiliary status. Moreover, the Plaintiffs have argued that the allegedly discriminatory delegate system in the Republican Party stigmatizes and stifles members of the Freedom Republicans, a majority of whom are Americans of African descent, by treating African–American Republicans differently than other members of the Party. This injury to the group members, albeit indirect, is also a sufficient basis upon which to confer standing. *See United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

Moreover, the interests which the Freedom Republicans seek to protect in this lawsuit are "germane" to the organization's purpose. It is undisputed that the Freedom Republicans are a bona fide organization committed to advancing the interests of African Americans through, and within, the Republican Party. *See Humane Soc. of the United States v. Hodel*, 840 F.2d 45, 58 (D.C.Cir.1988) (the germaneness requirement is "undemanding" and requires only "mere pertinence between litigation subject and organizational purpose"). Finally, the Plaintiffs meet the

*Hunt* test and may prosecute this action because the presence of individuals who have actually been denied delegate status on the basis of racial discrimination is not necessary. Although the presence of individual victims of discrimination would be necessary in an action for monetary relief, an organization, such as the Freedom Republicans, may assert the rights of its members in an action for declaratory and injunctive relief challenging an agency's interpretation of governing law, such as the FEC's interpretation of the applicability of Title VI. *See International Union, UAW v. Brock*, 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986) (granting standing where organization tests validity of agency interpretation of applicable law).

■ The FEC also asks this Court to dismiss the Plaintiffs' request for a rulemaking by arguing that the Plaintiffs failed to exhaust their administrative remedies. The Plaintiffs' administrative-level Complaint does put the FEC on sufficient notice of Plaintiffs' desire for a rulemaking to implement the provisions of Title VI, however. *See* Exhibit A, Plaintiffs' Motion for Partial Summary Judgment at 3 ("At the very least, operation of Title VI would require that the FEC adopt implementing regulations and publish them in the Code of Federal Regulations"). The FEC dismissed the Plaintiffs' Complaint at the staff level for lack of jurisdiction. *See* Complaint at ¶ 24. Requiring the Plaintiffs to submit another, perhaps more formal petition for a rulemaking, as was suggested at the oral argument, would elevate form over substance.[4] Thus, this Court may now consider whether the FEC's dismissal of the Plaintiffs' request for a rulemaking was consistent with Title VI.

■ An agency's refusal to adopt rules and regulations for lack of jurisdiction is a reviewable decision. *See* 5 U.S.C. § 706(1). *Cf. In re Chemical Workers' Union*, 958 F.2d 1144, 1148–50 (D.C.Cir.,1992) (per curiam) (suggesting

---

4. *See generally* 5 U.S.C. § 704 (once an agency denies a request, there is no duty under the Administrative Procedures Act to seek declaratory judgment or reconsideration within the agency).

that agency's refusal to commence rule-making is reviewable when unlawful or when product of undue delay). Upon further evaluation of the relevant statutes and case precedent, the Court finds that the FEC does have an obligation to promulgate rules and regulations to insure the enforcement of Title VI. The language of Title VI is necessarily broad, and applies on its face to the FEC as well as to both major political parties and other recipients of federal funds:

> Each Federal agency and department which is empowered to extend Federal financial assistance to any program or activity, by way of grant, loan or contract ... is authorized and directed to effectuate the provisions ... of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be consistent with the achievement of the statute authorizing the financial assistance with which the action is taken.

42 U.S.C. § 2000d–1. In fact, the FEC's own regulations acknowledge that the FEC must issue any loans, grants or contracts in a manner consistent with governing law:

> Public funds shall not be used to defray any expense the incurring of which violates any law of the United States or any law of the State in which such expense is incurred or paid, or any regulation prescribed under federal or State laws.

11 C.F.R. § 9008.6(b)(2). Although "primary responsibility for prompt and vigorous enforcement of Title VI rests with the head of each department and agency administering programs of Federal financial assistance," the Department of Justice also has a role in coordinating Title VI enforcement actions. *See* 28 C.F.R. § 50.3. *Cf.* E.O. 11246; E.O. 12250. The Court notes that the Department of Justice has articu-

lated general guidelines to which the FEC must adhere in the absence of a formal rulemaking. *See* 28 C.F.R. § 42.104.

▌ The claims raised by the FEC in its Motion to Dismiss do not impede the Court from finding that the FEC must begin a rulemaking process for purposes of implementing Title VI as the Plaintiffs have requested. The FEC first contends that Title VI has no applicability to the funding of political conventions due to the overriding First Amendment concerns associated with regulating political activity. Although there has not been a full briefing and development of the facts on the First Amendment issue, the agency's recitation of First Amendment law does not square with this Court's understanding of the evolution of the First Amendment and the civil rights laws, as there are numerous cases in which the asserted interests of free speech and freedom of association have been overridden by the need to prevent state-sponsored discrimination.[5] Furthermore, mere "concerns" about the First Amendment cannot justify the agency's total failure to attempt to articulate rules and regulations implementing Title VI. The agency cannot reasonably expect this Court to find that the First Amendment bars such a rulemaking, *in toto,* before the agency engages in some inquiry on the subject, which a Court could then review.

▌ The agency also argues that the monies provided to political parties do not qualify as "federal financial assistance" within the purview of Title VI because Title VI "was meant to cover only those situations where federal funding is given to a non-federal entity which, in turn, provides financial assistance to the ultimate beneficiary." *Soberal–Perez v. Heckler,* 717 F.2d 36, 38 (2d Cir.1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1713, 80 L.Ed.2d 186 (1984). As a preliminary matter, the Court

---

5. *See, e.g., Austin v. Michigan Chamber of Commerce,* 494 U.S. 652, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990) (although First Amendment rights are implicated, Michigan statute prohibiting corporations from using corporate funds for independent expenditures in state elections does not run afoul of the First Amendment given the compelling interest in preventing corruption in the political process); *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte,* 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987) (California law requiring admission of women to Rotary Clubs is not violative of First Amendment right of freedom of association given compelling need to eradicate discrimination); *Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (Minnesota could require Jaycees to admit women as full voting members despite members' First Amendment associational rights).

must note that *Soberal–Perez* is not binding authority in this Circuit. However, even assuming arguendo that *Soberal–Perez* correctly interprets Title VI, the agency's claim must fail; the funds provided to the political parties for their conventions meet the criteria espoused in *Soberal–Perez* because the FEC monies enable the party to provide a platform for other, ultimate beneficiaries, such as Republican candidates and party members.

■ Finally, the agency contends that, in enacting the Federal Election Campaign Act Amendments of 1974,[6] Congress expressed its intention that the public financing of political campaigns would not allow for government regulation of the conduct of a political party's internal affairs. The agency's resort to the legislative history of the Federal Election Campaign Act is unavailing in that nothing in the legislative history suggests a Congressional desire to prevent the FEC from enforcing the provisions of Title VI.

For all of these reasons, the Court shall grant the Plaintiffs' Motion for Summary Judgment as to Count I of the Complaint and shall direct the FEC to conduct a rulemaking process, with all deliberate speed, so that the Plaintiffs may receive the benefit of the agency's views as to the implementation of Title VI of the Civil Rights Act of 1964 prior to the August 1992 National Republican Convention in Houston, Texas.[7]

Accordingly, it is, by this Court, this 7th day of April, 1992,

ORDERED that the Defendant's Motion to Dismiss shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the Plaintiffs' Motion for Partial Summary Judgment on Count I of the Complaint shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the above-captioned case shall be, and hereby is, REMANDED to the Defendant agency; and it is

FURTHER ORDERED that, with all deliberate speed, the Defendant agency shall begin rulemaking proceedings designed to consider the means through which the FEC will ensure compliance with Title VI of the Civil Rights Act, as amended; and it is

FURTHER ORDERED that the above-captioned case shall be, and hereby is, DISMISSED from the dockets of this Court, without prejudice to the right to make oral application to reopen within thirty (30) days of the final action of the Defendant agency.

---

6. Pub.L. 93–443, 88 Stat. 1263.

7. The FEC also claims that the Court may not consider Plaintiffs' Complaint because the Plaintiffs have not exhausted the administrative remedies prescribed under 42 U.S.C. § 2000d–1. As a technical matter, the Plaintiffs have not exhausted the available administrative remedies in order to terminate the FEC's funding of the Republican National Convention at Houston in August, 1992 because they were cut off due to the FEC staff counsel's dismissal of their agency-level Complaint on December 23, 1991. *See Abramson v. Bennett, supra* (outlining the procedures to which a private party plaintiff must adhere in order for funding to be terminated

under Title VI). By summarily dismissing the Plaintiffs' Complaint for lack of jurisdiction, the FEC did not enable Plaintiffs to exhaust the available avenues of administrative review. Thus, the Court shall not dismiss Count II at this time, but shall give the Plaintiffs the opportunity to reassert the claims made in Count II before the agency. The Court also expresses the precatory wish that the parties, with the assistance of the Civil Rights Division of the Department of Justice in its role as coordinator of the Civil Rights Act, and in particular given its role in enforcing Title VI, *see* E.O. 11246 and E.O. 12250, will bring this case to a speedy and just conclusion consonant with the law.